The STATE of Ohio, Appellee,

v.

COMBS, Appellant.

[Cite as State v. Combs (1994), 100 Ohio App.3d 90.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930498.

Decided Aug. 24, 1994.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christian J. Schaefer,* Assistant Prosecuting Attorney, for appellee.

*James Kura, Kevin L. Fahey* and *Linda E. Prucha,* for appellant.

*Per Curiam.*

## I. STATEMENT OF THE CASE

On February 17, 1987, Ronald Dean Combs, petitioner-appellant, was convicted of the aggravated murders of Peggy and Joan Shoonover. Both convictions were accompanied by gun and death specifications. Peggy Shoonover was petitioner's former girlfriend and the mother of his child. Joan Shoonover was Peggy Shoonover's mother. On February 17, 1988, Combs received the death sentence for the murders and three years of actual incarceration for the gun specifications. Combs was unsuccessful in his appeals to this court of appeals and the Ohio Supreme Court. See, generally, *State v. Combs* (Sept. 19, 1990), Hamilton App. No. C–880156, unreported, 1990 WL 135000; *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071. The United States Supreme Court subsequently denied his petition for a writ of certiorari in *Combs v. Ohio* (1992), 504 U.S. 977, 112 S.Ct. 2950, 119 L.Ed.2d 573.

Combs then filed an R.C. 2953.21 petition for postconviction relief with the Hamilton County Court of Common Pleas. The trial court determined that he was not entitled to relief. Therefore, the court refused to grant a hearing on the postconviction petition and entered judgment for the state. From that order, Combs brings this appeal.

## II. FIRST ASSIGNMENT OF ERROR: NO EVIDENTIARY HEARING

In his first assignment of error, Combs argues that the trial court erred by not granting an evidentiary hearing on his petition for postconviction relief. Such a hearing was necessary, he reasons, to determine whether he was entitled to have

the judgment or sentence set aside on the grounds that it was void or voidable under the Ohio or United States Constitutions. R.C. 2953.21(A).

When a person files an R.C. 2953.21 petition, the court must grant a hearing unless it determines that the petitioner is not entitled to relief. R.C. 2953.21(E). To make that determination, the court must consider the petition, supporting affidavits, and files and records, including, but not limited to, the indictment, journal entries, clerk's records, and transcript of the proceedings. R.C. 2953.21(C).

There are several reasons why a court may refuse to grant a hearing when a petition for postconviction relief is filed. The court may deny the hearing if it finds that the claim does not raise a constitutional issue, such as right to counsel or due process of law. *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph four of the syllabus; *State v. Powell* (1993), 90 Ohio App.3d 260, 264, 629 N.E.2d 13, 15–16. For example, a petitioner may bring a claim of newly discovered mitigating evidence. If, however, the claim does not allege some constitutional deprivation, such as ineffective assistance of counsel, the trial court may not grant relief based on R.C. 2953.21. *Powell*, 90 Ohio App.3d at 264, 629 N.E.2d at 15–16.

The court also may deny a hearing if it finds that the petition advances a constitutional claim, but that the issue "was raised or could have been raised" at the original trial or subsequent appeal. *Perry* at paragraph nine of the syllabus. Those claims are barred by *res judicata*. *Id.* Normally, a constitutional claim, such as ineffective assistance of trial counsel, is based on evidence in the original trial record and is barred on postconviction. See, *e.g., State v. Johnson* (1986), 24 Ohio St.3d 87, 88, 24 OBR 282, 283, 494 N.E.2d 1061, 1063 (brought on appeal); *Perry* at paragraph seven of the syllabus (barred on postconviction). It follows, therefore, that the court may apply *res judicata* if the petition for postconviction relief does not include any materials out of the original record to support the claim for relief. *Perry* at paragraph nine of the syllabus; *State v. Cole* (1982), 2 Ohio St.3d 112, 114, 2 OBR 661, 663–664, 443 N.E.2d 169, 171.

Evidence outside the record by itself, however, will not guarantee a right to an evidentiary hearing. To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *Cole*, syllabus. One example of evidence outside the record that would show that the claim could not have been brought on direct appeal is evidence that alleges that, after conviction, petitioner discovered facts to indicate that the prosecutor improperly withheld favorable evidence to the accused. *Perry*, 10 Ohio St.2d at 179, 39 O.O.2d at 191–192, 226 N.E.2d at 107–108, citing *McMullen v. Maxwell* (1965), 3 Ohio St.2d 160, 32

O.O.2d 150, 209 N.E.2d 449, with approval. By contrast, when a petition alleges that a defendant was convicted on illegally seized evidence, but does not allege facts to show that the issue could not have been brought on direct appeal, the court may deny a hearing. *Perry,* 10 Ohio St.2d at 182, 39 O.O.2d at 193, 226 N.E.2d at 109.

Another type of evidence outside the record that will not compel a hearing is evidence that does not meet a minimum level of cogency to support the claim. *Cole,* 2 Ohio St.3d at 115, 2 OBR at 664, 443 N.E.2d at 172; *State v. Coleman* (Mar. 17, 1993), Hamilton App. No. C–900811, unreported, 1993 WL 74756. For example, evidence in the form of magazine articles that are irrelevant to the issues in the petition will not overcome *res judicata.* *State v. Bedford* (Sept. 11, 1991), Hamilton App. No. C–900412, unreported, 1991 WL 175783. Finally, evidence out of the record in the form of petitioner's own self-serving affidavit alleging a constitutional deprivation will not compel a hearing. *State v. Kapper* (1983), 5 Ohio St.3d 36, 37–38, 5 OBR 94, 95–96, 448 N.E.2d 823, 826.

When the evidence passes this minimum threshold of showing a constitutional claim that could not have been raised on direct appeal, the court may still deny a hearing if it finds that based on all the files and records, there are no substantive grounds for relief. R.C. 2953.21(C). For example, a person other than the petitioner may submit an affidavit raising a claim of ineffective assistance of trial counsel based on evidence not presented at trial. If, however, that evidence is cumulative of, or alternative to, material presented at trial, the court may properly deny a hearing. *Powell,* 90 Ohio App.3d at 270, 629 N.E.2d at 19 (cumulative evidence); see, also, *State v. Post* (1987), 32 Ohio St.3d 380, 387–389, 513 N.E.2d 754, 762–763 (existence of alternative theories will not show ineffective assistance of trial counsel); *State v. Coleman* (Mar. 17, 1993), Hamilton App. No. C–900811, unreported, 1993 WL 74756. Similarly, if the evidence is irrelevant to the issues at the trial or raises a nonprejudicial constitutional claim, the evidence will not provide substantive grounds for relief. *State v. Van Hook* (1988), 39 Ohio St.3d 256, 263–264, 530 N.E.2d 883, 890 (disregarding irrelevant evidence will not show error at trial); *State v. Jackson* (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819, syllabus (no prejudicial deprivation).

Finally, the court may deny a hearing if the claim does not seek to render the trial court's own judgment void or voidable. R.C. 2953.21(A). As noted by this court, "the trial court, as an inferior court, has no jurisdictional basis on which it can review the actions and decisions of superior courts." *Powell,* 90 Ohio App.3d at 267, 629 N.E.2d at 17. For instance, the trial court may deny a hearing if it finds that the claim raises the constitutional issue of ineffective assistance of appellate counsel, not trial counsel. *State v. Murnahan*

(1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, paragraph one of the syllabus; *State v. Rone* (Aug. 31 1983), Hamilton App. No. C–920640, unreported, 1983 WL 5172. Similarly, the trial court may deny a hearing on a claim that asserts an error made after the original conviction, such as the appellate court's incorrectly reviewing imposition of the death penalty. *Powell*, 90 Ohio App.3d at 267, 629 N.E.2d at 17; see, also, *Murnahan*, 63 Ohio St.3d at 63, 584 N.E.2d at 1207; *State v. Williams* (Nov. 24, 1993), Cuyahoga App. No. 64151, unreported, slip op. (Lexis) at 10–12, 1993 WL 489748; *State v. Bedford* (Sept. 11, 1991), Hamilton App. No. C–900412, unreported, 1991 WL 175783.

### A. *Ineffective Assistance of Trial Counsel: Guilt Phase*

#### 1. *No Evidence Out of the Record*

In Combs's postconviction petition, he raised ineffective-assistance arguments in seventeen of his fifty-nine claims for relief. In the first group of these ineffective-assistance claims, he contended that his trial attorney failed to object to error during *voir dire* (claim 3), object to erroneous jury instructions (claim 4), file a motion to suppress Combs's out-of-court statements (claim 11, Para. 118[a], [b] ), move for a separation of witnesses (claim 11, Para. 119[d] ), request that the court redact unfairly prejudicial evidence (claim 11, Para. 122, 123), object to improper arguments and instructions (claim 11, Para. 120, 121[a]–[c]; claim 16),[1] and request certain jury instructions (claims 42, 48).

Because none of these arguments is supported by evidence out of the record, they fail under *Cole*, 2 Ohio St.3d at 114, 2 OBR at 663–664, 443 N.E.2d at 172, and *Perry*, paragraph nine of the syllabus.

#### 2. *Evidence out of Record: Could have been Raised on Direct Appeal*

Combs further argued that his counsel failed to object to the admission of petitioner's out-of-court statement in which he claimed to be "Doc Holliday." (Claim 11, Para. 119[a].) This Doc Holliday comment was in the original trial transcript and normally would give rise to the sort of ineffective assistance claim that could have been brought on direct appeal. See, *e.g., State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831, 837; *Cole*, syllabus.

To support this claim, petitioner submitted two exhibits out of the original record. The first was an affidavit by an Appalachian expert explaining the difficulties that persons from certain rural areas have in adjusting to urban life. The second was an affidavit by petitioner's second cousin giving details of

---

1. Claim 11 raises numerous ineffective-assistance claims. We deal with these in different sections of this decision because they are supported by varying forms of evidence and present different legal issues.

Combs's state of intoxication in the days before the murders. These documents may explain why petitioner made the "Doc Holliday" statement. The evidence, however, does not pass the minimum threshold of showing why the attorney's failure to object could not have been brought as an ineffective-assistance claim on direct appeal. Therefore, this argument is barred by *res judicata. Perry,* 10 Ohio St.2d at 182, 39 O.O.2d at 193, 226 N.E.2d at 109; *Cole,* syllabus.

■ In claim 24, petitioner argued that his trial counsel failed because he did not file a motion to suppress Combs's out-of-court statement in which he said that the victims were "bitches" and "whores." The evidence presented to support this claim deals with general mitigation evidence, laypersons' impressions of counsel's performance, and alternate mitigation theories. None of the exhibits explains why the original appellate counsel could not have raised this issue based on the unamplified record on direct appeal.[2] Therefore, this claim is barred by *res judicata. Perry,* 10 Ohio St.2d at 182, 39 O.O.2d at 193, 226 N.E.2d at 109; *Cole,* syllabus.

■ Similarly, in claim 44, Combs argued that he received ineffective assistance because his attorney conceded that an out-of-court statement in which the petitioner said that one of the victims previously had pointed a gun at him was not admissible at trial. The supporting affidavits explain why petitioner's cultural background may have influenced his resort to violence against the victims, but the evidence does not show that the attorney's concession could not have been raised as ineffective assistance on direct appeal. Therefore this argument is also barred by *res judicata. Perry,* 10 Ohio St.2d at 182, 39 O.O.2d at 193, 226 N.E.2d at 109; *Cole,* syllabus.

3. *Evidence out of the Record: No Substantive Claim for Relief*

In his next claim, Combs stated that he received ineffective assistance because his attorney failed adequately to present evidence showing petitioner's level of intoxication at the time of the murders. He claimed that the attorney failed to offer evidence of blood tests taken after the crimes and failed to object to inaccurate testimony that indicated that no alcohol containers were found in petitioner's automobile. (Claim 11, Para. 119[b], [c].) The evidence of blood tests and information about alcohol containers were not in the trial record; therefore, the issues could not have been addressed by the court on direct appeal. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. Furthermore, based on their omission, petitioner made a colorable claim the trial counsel failed to provide effective assistance.

---

2. These exhibits are discussed later in greater detail. See claim 31.

Therefore, to determine whether the court erred by concluding that petitioner was not entitled to substantive relief, it is necessary to examine the elements of ineffective assistance claims. The test is (1) whether the attorney's failure to introduce the evidence fell below the objective standard of reasonableness, and (2) whether the deficient performance was prejudicial to petitioner. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. To establish prejudice, the petitioner may not necessarily rely upon a showing that, in the absence of the attorney's deficient performance, the outcome of the guilt or penalty phase would have been different. *Lockhart v. Fretwell* (1993), —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180, 190–191. He must show that he was denied some substantive or procedural right that made the "trial unreliable or the proceeding fundamentally unfair." *Id.*

In this case, intoxication may have been a defense to aggravated murder if it negated the purpose element of the crime. *State v. Hicks* (1989), 43 Ohio St.3d 72, 74–75, 538 N.E.2d 1030, 1034–1035. Combs argues, in essence, that this circumstantial evidence of intoxication, in the form of blood tests and alcohol containers, could have been used by his trial attorney to show that Combs was so intoxicated that he could not have formed the purpose to murder the victims. Evidence of intoxication, by itself, however, will not negate purpose. *Id.* Evidence of intoxication may show reduced inhibitions or impaired judgment, but "intoxication, even severe intoxication, can co-exist with purpose." *Id.* To negate the purpose element of aggravated murder, the evidence must not only show that Combs was intoxicated, but that he did not specifically intend to cause the death of the victims. *Id.*; see, also, *State v. Slagle* (1992), 65 Ohio St.3d 597, 602, 605 N.E.2d 916, 923; *State v. Young* (May 14, 1986), Hamilton App. No. C–830757, unreported, 1986 WL 5503; R.C. 2901.22(A).

The exhibits offered to support these claims do not address Combs's intent to murder the victims. The exhibits state that blood tests were done in the hospital and wine cooler bottles were found in Combs's car after the murders. By contrast, at trial, Combs's own expert, Dr. Roger H. Fisher, specifically testified about purpose in the following cross-examination colloquy:

"Q. [Combs] was under the influence but at the same time he was acting intentionally, and purposely when he acted as he did on July 15th; is that correct?

\* \* \*

"A. I certainly believe that he was, yes."

In the context of the trial, therefore, the tests and bottles may have been circumstantial evidence of Combs's intoxication. The exhibits, however, do not

allege facts that, if proven, would show that Combs could not have intended to kill the victims. Therefore, under *Strickland* and *Lockhart* the evidence does not illustrate that his attorney's performance fell below the objective standard of reasonableness or that the performance was prejudicial to the defense. The court properly concluded that the evidence did not provide substantive grounds for relief.

In a closely related argument, petitioner argued that he received ineffective assistance because his attorney did not obtain an expert to review the medical files and test results regarding Combs's intoxication. (Claim 11, Para. 117[d].) The evidence out of the record that petitioner used to support this claim is exhibit seventeen, the trial attorney's affidavit. In that affidavit, the attorney states that he used the coroner, not a medical expert, to examine the records. The affidavit does not assert, or allege any facts from which to infer, that this choice fell below the standard of reasonableness or resulted in prejudice to petitioner. Therefore, the affidavit does not contain information to support a substantive claim of ineffective assistance. The trial court correctly denied a hearing on this issue.

## B. *Ineffective Assistance: Penalty Phase*

In his thirty-first claim, petitioner argued that his attorney's performance fell below the reasonable standard at the penalty phase because he did not investigate certain mitigation factors. As a general rule, ineffective assistance of counsel at mitigation, just like ineffective assistance at trial, is an issue that can be brought on direct appeal. See, *e.g., Johnson,* 24 Ohio St.3d at 87–88, 24 OBR at 282–283, 494 N.E.2d at 1062–1063; *Post,* 32 Ohio St.3d at 388, 513 N.E.2d at 762. For example, the unamplified record on direct appeal may show that, because of insufficient time and lack of preparation, counsel did not provide effective assistance at the penalty phase of the trial. *Johnson,* 24 Ohio St.3d at 87–88, 24 OBR at 282–283, 494 N.E.2d at 1062–1063 (ineffective); see, also, *Post,* 32 Ohio St.3d at 388, 513 N.E.2d at 762 (effective).

## 1. *Exhibits to Support Claim*

Petitioner, in an attempt to meet the minimum evidentiary requirements for a hearing, presented information out of the record to support his claim of ineffective assistance at mitigation. That evidence can be grouped into four categories: (1) affidavits by Combs's friends and relatives offering general mitigation evidence, (2) affidavits by mitigation experts criticizing the trial attorney's lack of preparation, (3) affidavits by friends and relatives stating that the trial attorney lacked enthusiasm for the defense, and (4) trial counsel's own affidavit.

a. *Friends and Relatives: General Mitigation Information*

 Concerning the first category of information, the exhibits explain that Combs seriously abused drugs and alcohol and was particularly intoxicated the last two or three days before the murders. This information, however, was included in the original mitigation phase. The postconviction exhibits present additional evidence that the defendant was cooperative during his hospitalization after the murders. This information also was introduced at the mitigation phase. The exhibits offer information about petitioner's history of physical abuse by his father. This past abuse, however, also was explained at mitigation. Therefore, concerning the additional mitigation evidence presented in the exhibits, it is merely cumulative of the information already presented at the penalty phase. The evidence, therefore, is not sufficient to show ineffective assistance. *Powell,* 90 Ohio App.3d at 270, 629 N.E.2d at 19.

b. *Experts on Legal Defense*

With regard to other experts' opinions of the adequacy of counsel's mitigation performance, the evidence explains the cause and result of Combs's drug and alcohol abuse. In his petition, Combs presented an affidavit by Dr. Susan Keefe, an anthropology professor from North Carolina. Keefe's affidavit offered a theory on why persons from the Appalachian region of Kentucky have a proclivity toward alcoholism. At the mitigation phase, however, Combs's own expert, Dr. Fisher, also presented a theory of Combs's addiction. Fisher testified that Combs probably started his drug and alcohol abuse because of peer pressure, later resorting to continued abuse as a method of avoiding the problem of his unsatisfactory relationship with Ms. Shoonover.

Combs also presented an affidavit by Dr. Robert Smith, a psychologist who treated adults who were sexually, physically, and emotionally abused as children. Concerning the result of the drug and alcohol abuse, Smith stated that his examination of Combs revealed that he was addicted to drugs and alcohol and that his actions on the day of the murders were directly affected by his chemical abuse. This opinion corroborates the testimony of Fisher, who also testified that petitioner's impulsivity was increased by his intoxication at the time of the murders.

 A postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial. *State v. Jamison* (Nov. 10, 1992), Hamilton App. No. C–910736, 1992 WL 333011. The affidavits of Keefe and Smith presented mitigation theories that were no more than alternative or cumulative to the theories used by Fisher. Therefore, they do not support substantive relief under either prong of the *Strickland–Lockhart–Bradley* test.

c. *Friends and Witnesses: Opinions about Trial Attorney*

■ The next area of information presented in the postconviction exhibits consists of comments of several of Combs's relatives and friends regarding their assessment of the attorney's performance. The exhibits state, for example, that Combs's counsel just went through the motions, inadequately prepared witnesses, and did not contact certain witnesses to testify. The testimony that these friends and relatives offer in their exhibits, however, merely reiterates Combs's history as a physical-abuse victim and his personal abuse of drugs and alcohol. Therefore, it is merely cumulative of the information already presented at mitigation. *Powell,* 90 Ohio App.3d at 270, 629 N.E.2d at 19.

d. *Trial Counsel's Own Affidavit*

■ In trial counsel's own affidavit, the attorney first stated that he probably committed certain errors at trial. For instance, the attorney admitted that he should have objected when the prosecutor offered testimony of defendant's out-of-court statement and he should have moved for a mistrial at another point. These purported errors, however, are in the record and could have been raised on direct appeal. See, *e.g., Holloway,* 38 Ohio St.3d at 244, 527 N.E.2d at 837; see, also, *Perry* at paragraph nine of the syllabus; *Cole,* syllabus.

■ Trial counsel also admitted that, in retrospect, his performance would have been improved by the use of a mitigation expert. Even though counsel could have performed more adroitly at trial, he did present a meaningful theory of mitigation. Therefore, his speculation that a different tactic may have improved the defense does not show ineffective assistance of counsel. *Post,* 32 Ohio St.3d at 388, 513 N.E.2d at 762–763; *State v. Steffen* (Aug. 7, 1991), Hamilton App. No. C–900596, unreported, 1991 WL 149559.

Based on this reasoning, the trial court did not err by refusing to grant a hearing on the ineffective assistance of trial counsel alleged in claim 31.

C. *Ineffective Assistance of Counsel: Experts*

■ In claim 11, Combs argued that his attorney failed by not using a firearms expert and by ineffectively utilizing Fisher, the psychological expert who did testify at trial. (Claim 11, Para. 117, [b], [c], [e].) These arguments are not supported by any evidence out of the record and are barred by *res judicata. Cole,* 2 Ohio St.3d at 114, 2 OBR at 663–664, 443 N.E.2d at 171; *Perry,* paragraph nine of the syllabus.

Combs also contended that his attorney did not obtain experts in the areas of drug and alcohol abuse. (Claim 11, Para. 117(a); claim 13.) This argument is supported by an affidavit by Dr. Hawgood, a clinical psychologist who testified

that, on the day of the murders, Combs's prior psychological development led to a "kaleidoscope of reactions," which further resulted in violent, disinhibited, criminal behavior. According to Hawgood, the elements of Combs's development were inadequate infant bonding, deficient adaptive coping skills, physical child abuse, untreated attention deficit hyperactive disorder ("ADHD"), and overdependence on women as a stabilizing effect in his life.

Of these elements, all except for the diagnosis of ADHD were specifically discussed by Fisher at the mitigation phase. (Claim 31.) Despite this diagnosis, when, as here, counsel has presented a meaningful concept of mitigation, the existence of alternate or additional mitigation theories does not establish ineffective assistance. *State v. Beuke* (Aug. 14, 1991), Hamilton App. No. C–900718, unreported, 1991 WL 155219; *State v. Jamison* (Nov. 10, 1992), Hamilton App. No. C–910736, 1992 WL 333011; see, also, *Van Hook*, 39 Ohio St.3d at 263–264, 530 N.E.2d at 890.

Combs also supports his argument concerning a drug and alcohol abuse expert with references to an affidavit in which Smith offered her conclusions about petitioner's drug and alcohol problems and an affidavit by a mitigation expert. These exhibits present information and theories that are cumulative of the evidence that trial counsel offered at mitigation. Therefore, under *Strickland* and *Lockhart,* they do not support substantive grounds for relief. This claim fails.

In claims 29, 33, and 41, Combs argued that he received ineffective assistance of counsel because his trial attorney did not request a social worker, an independent psychologist, or a cultural expert. Regarding mitigation, each of the exhibits presented to support these arguments was employed by petitioner in previous claims to show ineffective assistance of counsel at the penalty phase of the trial. Because the evidence presented is merely cumulative of, or alternative to, other mitigation evidence presented by the trial attorney, this out-of-record information does not support substantive grounds for an ineffective-assistance claim at mitigation.

Similarly, at the guilt phase, the only use for the evidence in these exhibits would have been to negate the purpose element of aggravated murder. Because petitioner's own expert conceded that Combs acted purposefully, this evidence would not have supported an ineffective-assistance claim at trial. Therefore, the trial court properly denied a hearing on these claims.

D. *Ineffective Assistance: Guilt/Penalty*

In his next claims, petitioner contended that he received ineffective assistance because his attorney conceded guilt, failed to perform an adequate *voir dire,* and

failed to request an instruction distinguishing excuse from mitigation. (Claims 38, 55, 56, 59.) As an initial matter, all of these alleged errors are in the original trial transcript and could have been raised on direct appeal. See, *e.g.*, *State v. Tyler* (1990), 50 Ohio St.3d 24, 39, 553 N.E.2d 576, 594 (concede guilt); *State v. Lewis* (1993), 67 Ohio St.3d 200, 208, 616 N.E.2d 921, 928 (inadequate voir dire); *State v. Poindexter* (Mar. 6, 1991), Hamilton App. No. C–890734, unreported, 1991 WL 30613 (concede guilt, faulty mitigation instructions).

To meet the requirement for out-of-record evidence for ineffective-assistance claims, petitioner offered exhibits five through eighteen to support these claims. These exhibits, which offer general mitigation evidence and criticisms of counsel's performance, do not, however, explain why the alleged errors in the record could not have been brought on direct appeal. See, generally, *Perry*, 10 Ohio St.2d at 182, 39 O.O.2d at 193, 226 N.E.2d at 109.

Petitioner, nevertheless, argues that these alleged errors take on increased importance because of the alleged ineffective assistance at mitigation. In effect, appellant is attempting to overcome the *res judicata* effect of alleged errors in the trial transcript by linking them with out-of-the-record evidence used to show ineffective assistance at mitigation. Petitioner, however, did not receive ineffective assistance at mitigation. Therefore, even if it were permissible for appellant to link these claims to the mitigation phase, there is no substantive reason to grant a hearing.

## E. *Ineffective Assistance/Due Process*

Petitioner next brought a series of arguments based on generalized due-process, equal-protection, and cruel-and-unusual punishment claims. He contended that the prosecutor converted the absence of statutory mitigation factors into nonstatutory aggravators (claim 10); the prosecutor made improper comments during the penalty phase of the trial (claim 12); the trial court improperly considered voluntary intoxication as a mitigating factor, stating that it did not rise to the level of a defense (claim 18); the trial court improperly instructed the jury not to consider sympathy (claim 32); the cumulative effect of errors in the guilt and penalty phases made the death penalty unreliable (claim 35); and the death specifications for both murders were the same fact (claim 58). All of these claims are supported by citations to the transcript of the proceedings. To that extent, therefore, the claims are barred by *res judicata*. *Cole*, 2 Ohio St.3d at 114, 2 OBR at 663–664, 443 N.E.2d at 171; *Perry*, paragraph nine of the syllabus.

Petitioner also argues that these claims are cognizable in postconviction because they were made more harmful by ineffective assistance at the mitigation phase. Here, just as in claims 38, 55, 56, and 59, petitioner seeks to create due-process arguments by linking these errors with exhibits previously used to show

ineffective assistance at mitigation. These exhibits already have been found not to support a claim of ineffective assistance at the mitigation phase. Therefore, the court correctly denied a hearing on these claims.

■ In claim 47, petitioner contended that at the sentencing phase of his trial, he was denied due process because the state failed to prove that aggravating circumstances outweighed mitigating factors. This argument, which challenges the weight and sufficiency of the evidence at sentencing, was raised on direct appeal. Therefore it is barred by *res judicata*. *Cole*, 2 Ohio St.3d at 114, 2 OBR at 663–664, 443 N.E.2d at 171; *Perry*, paragraph nine of the syllabus.

In claim 47, petitioner additionally presented exhibits five through sixteen, twenty-two through thirty, and evidence presented in earlier claims to show that the result of the aggravating-mitigating weighing process was erroneous. In this case, these exhibits have already been shown not to prove ineffective assistance of counsel in previous claims for relief. Therefore, even if this evidence were taken to assert, once again, that appellant received ineffective assistance at mitigation, they previously have been disposed of on those grounds. Therefore, their cumulative effect in this claim also does not warrant a hearing. *State v. Coleman* (Mar. 17, 1993), Hamilton App. No. C–900811, unreported, 1993 WL 74756. This claim is not well made.

## F. *Due Process*

Petitioner presented no evidence out of the record to support the first sixteen of his due-process arguments. (Claims 6, 7, 8, 15, 17, 19, 20, 21, 23, 27, 28, 30, 40, 43, 45, 50.) These claims fail under *Cole*, syllabus.

■ In claim 37, petitioner raised generalized due-process, equal-protection, and cruel-and-unusual-punishment claims, arguing that jurors did not understand the court's instructions of law. In support of this claim, petitioner submitted a *Psychology Today* article in which a professor of psychiatry discussed the emotional reactions of jurors in another death-penalty case. This article does not discuss any juror, attorney, or judge as that person was involved in this case. Therefore, this exhibit does not pass the minimum threshold of cogency required to raise a constitutional claim. See, generally, *Cole*, 2 Ohio St.3d at 114, 2 OBR at 663–664, 443 N.E.2d at 172; *State v. Coleman* (Mar. 17, 1993), Hamilton App. No. C–900811, unreported, 1993 WL 74756; *State v. Bedford* (Sept. 11, 1991), Hamilton App. No. C–900412, unreported, 1991 WL 175783.

■ In the next claims, petitioner contended that the trial court gave incorrect jury instructions, improperly limited questions on voir dire, and excluded relevant evidence. (Claims 2, 5, 46.) The exhibits offered to support these claims, affidavits by Hawgood, Combs, and the trial attorney, either are irrele-

vant or do not show why these issues could not have been brought on direct appeal. Therefore, the court properly applied *res judicata.* See, generally, *Perry,* 10 Ohio St.2d at 182, 39 O.O.2d at 193, 226 N.E.2d at 109; *Cole,* syllabus; *State v. Coleman* (Mar. 17, 1993), Hamilton App. No. C–900811, unreported, 1993 WL 74756; *State v. Bedford* (Sept. 11, 1991), Hamilton App. No. C–900412, unreported, 1991 WL 175783.

In his next series of claims, petitioner argued that his conviction was void or voidable because the trial court did not grant his motion for a change of venue (claim 1); he received a death sentence that was disproportionate to other sentences in Hamilton County (claim 26); and he was sentenced under the Ohio death-penalty statutes, which violate the treaty of Organization of American States (claim 51). These claims were supported by exhibits that consisted of newspaper articles, lists of cases, and copies of treaties that existed at the time of the trial, but the materials did not show that the claims could not have been brought on direct appeal, and the court correctly applied *res judicata* to them.

In claim 22, petitioner contended that the court incorrectly admitted his out-of-court statement that the victims were "bitches" and "whores." This claim has already been disposed of in response to claim 24.

Finally, petitioner argued that the court incorrectly allowed a Cincinnati criminalist to testify incorrectly that he searched appellant's car and did not find alcohol containers. (Claim 25.) Because appellant was not prejudiced by the omission of this information related to his intoxication during the killings, the court did not err in its ruling on this claim.

### G. *Prosecutorial Misconduct*

Petitioner next argued that because of various infractions by the prosecutor, he should have been granted postconviction relief. The first group of claims is not supported by evidence outside the record; these claims are barred by *res judicata.* (Claims 9, 52, 53.) *Cole,* 2 Ohio St.3d at 114, 2 OBR at 663–664, 443 N.E.2d at 171; *Perry,* paragraph nine of the syllabus.

In claim 54, petitioner argued that he was denied due process and equal protection of the law because the prosecutor mentioned Combs's prior acts of domestic violence and stated that he was seeking the death penalty on behalf of the victims' families. Petitioner offered no evidence outside the record to support this due-process/equal-protection claim. Just as in claims for errors in sentencing, however, petitioner sought to link these trial errors to ineffective assistance during mitigation. Because petitioner did not receive ineffective assistance at mitigation, this argument fails.

### H. *Appellate Errors*

Petitioner next made a series of arguments relating to purported errors after the trial. He claimed that the court of appeals improperly determined what the jury would have done without errors at trial (claim 14); reviewing courts applied an unconstitutionally stringent plain error standard (claim 34); the court of appeals improperly considered cumulative errors (claim 36); the state did not prove on direct appeal that constitutional errors at trial did not contribute to conviction (claim 39); appellate review was done with an incomplete record (claim 49); and the state interfered with post-trial interview (claim 57).

These claims all raise alleged errors during the appellate or postconviction process, which is after the trial court lost its original jurisdiction over the case. As such, none of these claims seeks to render the original trial court judgment void or voidable. Therefore, the trial court correctly denied a postconviction hearing on these claims. *Murnahan,* 63 Ohio St.3d at 64, 584 N.E.2d at 1208; *Powell,* 90 Ohio App.3d at 267, 629 N.E.2d at 17; *State v. Williams* (Nov. 24, 1993), Cuyahoga App. No. 64151, unreported, slip op. (Lexis) at 10–12, 1993 WL 489748.

The trial court did not err in denying a hearing on each of petitioner's fifty-nine claims. Therefore, the first assignment of error is overruled.

## III. SECOND ASSIGNMENT OF ERROR: FINDINGS OF FACT

In his second assignment of error, petitioner argues that the trial court issued inadequate findings of fact and conclusions of law. He argues that the findings of fact did not specify the parts of the record that negated his claims. When the trial court dismisses a petition for postconviction relief, it must make and file findings of fact and conclusions of law to explain its reasoning. R.C. 2953.21(C). The court must do so even when the petitioner has presented no facts out of the record or has filed a petition that the trial court may properly dismiss in a summary fashion. *State v. Mapson* (1982), 1 Ohio St.3d 217, 1 OBR 240, 438 N.E.2d 910; *State ex rel. Brown v. Court of Common Pleas* (1986), 23 Ohio St.3d 46, 23 OBR 122, 491 N.E.2d 303. If the petition does not meet the threshold of presenting facts that, if proven, would entitle the petitioner to relief, the court's findings of fact need not specify the parts of the record that negate the postconviction request. *Perry,* 10 Ohio St.2d at 178, 39 O.O.2d at 191, 226 N.E.2d at 107. If the petition alleges facts sufficient to entitle the petitioner to relief, but the files and records negate the facts, the court should specify the portions of the record that negate the allegations. *Id.* The overriding goal is to allow the petitioner to prosecute a meaningful appeal. *State ex rel. Carrion v. Harris* (1988), 40 Ohio St.3d 19, 19, 530 N.E.2d 1330, 1330–1331.

On the only claims on which the trial court was required to examine the record to determine the substantive validity of the claims, the court did refer to the parts of the record that negated the claims. The references in the findings of facts were sufficient to allow the appeals court to make a meaningful review. The second assignment of error is overruled.

## IV. THIRD, FOURTH, FIFTH, AND SIXTH ASSIGNMENTS OF ERROR

In these assignments of error petitioner presents versions of arguments already discussed in the first assignment of error. In the third, he claims that the court improperly applied the doctrine of *res judicata.* In the fourth, he claims that the court erred by not granting relief on the ineffective assistance claims presented in claims 11 and 31. In the fifth, he argues that the court erred by not granting relief on the claims related to experts. Finally, in the sixth, he argues that the court erred by not setting aside his judgment because each of his fifty-nine claims presented a constitutional deprivation. Each of these issues is subsumed in the analysis in the first assignment of error. Therefore, the third, fourth, fifth, and sixth assignments of error also are overruled.

## V. SEVENTH ASSIGNMENT OF ERROR

In the final assignment of error, petitioner maintains that the trial court denied him due process of law by adopting findings of fact originally drafted by the state. This assignment of error is overruled under the authority of *Adkins v. Adkins* (1988), 43 Ohio App.3d 95, 97–98, 539 N.E.2d 686, 689; *Powell,* 90 Ohio App.3d at 263, 629 N.E.2d at 15; *State v. Van Hook* (Oct. 21, 1992), Hamilton App. No. C–910515, unreported, 1992 WL 308350; *State v. Byrd* (Feb. 26, 1992), Hamilton App. No. C–910340, unreported, 1992 WL 37761.

All of petitioner's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., KLUSMEIER and M.B. BETTMAN, JJ., concur.