Defendant-appellant Reginald Brooks appeals from the trial court's denial of his petition for post-conviction relief without conducting an evidentiary hearing. His principal argument is that his counsel provided ineffective assistance throughout his capital trial for mass murder and could have done more to prove his claims of impaired mental status. These claims were previously rejected on direct appeal, which was based on the existing record. We again reject his claims as further embellished in this appeal based on the record as supplemented in this post-conviction proceeding.
Defendant was indicted on three counts of aggravated murder, with mass murder specifications, for killing his three sons by shooting each of them in the head from point-blank range as they lay in their beds. He was appointed two defense counsel. Following a pretrial hearing approximately fourteen months after his indictment, he was found competent to stand trial. The trial court stated:
 [T]he court finds that the def[endan]t is able to know and understand the precise nature[,] date[,] and circumstances of the offense for which he is charged. He is able to demonstrate an understanding of the offense for which he is charged. He is able to demonstrate an understanding of the types of evidence against him, and has ability to think independently in response to the evidence against him.
 He has understanding of court room procedure and the role of the Judge, Attorneys and Jurors.
 Mr. Brooks has ability to understand the charge against him and work and cooperate with his attorneys in his defense. He is competent to stand trial.
Defendant later waived trial to a jury, and the matter was tried to a three-judge panel.
The panel found appellant guilty of all three counts of aggravated murder with the accompanying mass murder specifications. Defendant's counsel, on motions granted by the trial court, obtained at state expense a third attorney and a third mental health expert to assist in the mitigation phase. Following a mitigation hearing, the three-judge panel found that the aggravating circumstances of the homicides outweighed the mitigating factors. The three-judge panel sentenced him to three concurrent death penalties.
Defendant's direct appeal to this court claimed, inter alia,
that his three trial counsel provided ineffective assistance ranging from the competency hearing to the guilt and penalty phases of his trial. On appeal he was represented by new appellate counsel. Rejecting his claim, this court affirmed defendant's convictions and death sentences in State v. Brooks
(Aug. 15, 1985), Cuyahoga App. No. 48914, unreported. Also rejecting his claim, the Supreme Court of Ohio likewise affirmed defendant's convictions and death sentences. State v. Brooks
(1986), 25 Ohio St.3d 144.
Represented by the Ohio Public Defender, defendant filed a petition for writ of certiorari to the United States Supreme Court. His brief specifically argued that he was denied effective assistance of trial counsel because of counsel's failure to prepare and develop the issue of his incompetence to stand trial. The Supreme Court denied his petition. Brooks v. Ohio (1987),479 U.S. 1101. After the denial of his petition for certiorari, defendant, again represented by the Public Defender, filed the petition for post-conviction relief ("PCR Petition") at bar.
Defendant's PCR Petition raised the following nine claims for relief: (1) ineffective assistance of trial counsel in the guilt phase; (2) ineffective assistance of trial counsel in the penalty phase; (3) improper denial of expert assistance; (4) failure by the trial court to protect defendant's rights; (5) ineffective assistance of appellate counsel; (6) improper admission of victim impact evidence; (7) "state-assisted suicide;" (8) improper denial of discovery by the trial court in the PCR proceedings; and (9) defendant's incompetency with respect to the PCR proceedings.
Of the various issues the PCR Petition covered, the basic premise was that defendant was mentally incompetent or possibly insane or had diminished mental capacity. Various claims flowed from this premise: for example, that his trial and appellate counsel were ineffective throughout the proceedings for failing to investigate and/or present evidence on this condition. Also based on this premise was the argument that the limits which defendant placed upon the defense litigation strategy resulted from his mental incompetence. The prosecution opposed defendant's PCR Petition and filed an extensive document captioned "motion to dismiss — summary judgment requested." The prosecution argued that defendant's claims were barred by res judicata and were unsupported by any evidence, either in the original record or in the supplements submitted with his PCR Petition.
The trial court ultimately denied defendant's PCR Petition and issued detailed findings of fact and conclusions of law. Defendant timely appeals, raising the following sole assignment of error:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT IN VIOLATION OF RULE FIFTY-SIX OF THE OHIO RULES OF CIVIL PROCEDURE[.] STATE v. MILANOVICH, 42 OHIO ST.2D 46, 325 N.E.2D 540 (1975).
This assignment lacks merit.
Defendant argues the trial court improperly dismissed his PCR Petition, because disposition of such petitions is governed by Civ.R. 56 and because genuine issues of material fact remained to be litigated in the case at bar. He further argues the trial court erroneously found his claims (1) barred by the doctrine ofres judicata, because the claims were not fully litigated in his prior direct appeals, and/or (2) lacked substantive grounds for relief.
This court recently discussed the standard governing the dismissal of PCR Petitions in State v. Broom (May 7, 1998), Cuyahoga App. No. 72581, unreported. The Court recognized, contrary to defendant's argument, that the proceedings are governed by statute. R.C. 2953.21 specifically provides for dismissal of PCR Petitions in appropriate cases upon the court filing findings of fact and conclusions of law. Id. at pp. 3-5. Although PCR petitions are classified as civil actions, the Rules of Civil Procedure do not apply when they are displaced by express statutory procedure in the legislation granting the substantive right to relief. Id.; Cf. Pegan v. Crawmer (1995),73 Ohio St.3d 607 (R.C. Chapter 2725 governing habeas corpus).
The First District Court of Appeals comprehensively summarized the law governing the dismissal of a PCR Petition in a capital case that raised similar arguments. State v. Combs (1994),100 Ohio App.3d 90, 96-99. It is well established that PCR Petitions may be denied without the court conducting a hearing when, as in the case at bar, the claims are barred by res judicata or they lack substantive grounds for relief. Id.
 Prior Proceedings
During defendant's pre-trial competency hearing, the state presented the testimony of psychiatrist Billowitz. He testified defendant was competent to stand trial, was able to understand the charges against him and, with "some mild limitations," was able to work with his attorneys. During cross-examination by defense counsel, Billowitz stated defendant had mental problems years before the murders. Defendant had been schizophrenic and, at the very worst, experienced paranoid delusions, but his schizophrenia was "in remission." The defense presented no witnesses and the court found him competent to stand trial.
The matter ultimately proceeded to the penalty phase after defendant was convicted of the murders. Defendant presented testimony from psychologist Althof, who interviewed defendant before trial, and psychiatrist Bertschinger, who interviewed him after the guilt phase. Althof diagnosed defendant as a paranoid schizophrenic. Bertschinger stated defendant had psychogenic amnesia which rendered him incompetent to stand trial because it prevented him from preparing his defense. Defense counsel Hrisko also testified.
The prosecution presented contrary testimony from psychiatrist Billowitz. Billowitz stated it was possible that defendant might have amnesia but he believed defendant was deliberately hiding information. He testified defendant was competent and was not insane. Defendant's wife testified that defendant had taken mental health courses at Cuyahoga Community College and that his psychology books had been obtained by the police. East Cleveland police officer Hughey testified that he collected the books.
The three-judge panel again found that defendant was competent to stand trial, that he was legally sane, and that the aggravating circumstances outweighed the mitigating factors for each offense. The court specifically rejected defendant's claim of amnesia, finding that he "conveniently had psychogenic amnesia about those things that were incriminating, [while] remembering things that were not incriminating" at or near the same time. (Opinion of the Trial Court at p. 20.) After stating a series of examples, the three-judge panel stated: "The Court concludes that his denials were lies, not memory lapses, and that he clearly was not a victim of psychogenic amnesia." (Id. at pp. 20-21.)
The three-judge panel specifically found, under two different theories, that defendant's mental illness did not outweigh the aggravating circumstances of the murders of his three sons. The three-judge panel stated:
 (3) Reginald A. Brooks, Sr. suffered from a mental illness — schizophrenia. The Court finds beyond a reasonable doubt that before, during, and after commission of the three offenses of Aggravated Murder upon his sons, defendant had a mental illness or defect, but that mental illness or defect did not cause him to lack substantial capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law. (Id. at 17-18.)
R.C. 2929.04(B)(3). The three-judge panel also separately found the fact that "defendant had suffered for some time with schizophrenia" was outweighed as one of the "other factors" in support of mitigation. (Id. at 18, Para 7.) R.C. 2929.04(B)(7).
Defendant made two arguments in his direct appeals relating to the litigation of his mental status. He challenged trial counsels' failure to present at the competency hearing (1) the inconclusive opinion of defense psychologist McPherson, and (2) testimony from psychiatrist Bertschinger, who had testified at the mitigation hearing and was not retained until after the guilty verdict. During his direct appeals, however, defendant was unable to establish deficient performance or prejudice by his three defense counsel assisted by three independent mental health experts.
The Ohio Supreme Court specifically found that psychologist McPherson's report contained no definitive conclusion on defendant's competency. The Court observed the report "certainly [did] not amount to evidence that `tends to prove incompetency.'"State v. Brooks (1986), 25 Ohio St.3d 144, 149. Not presenting McPherson's report, therefore, was not deficient performance of counsel and did not result in any prejudice, because the result of the competency hearing would not have been different if it had been presented.
The Supreme Court also rejected defendant's claims concerning the failure to obtain an independent psychiatric report prior to the competency hearing. The Supreme Court noted that the three-judge panel received the evidence from psychiatrist Bertschinger and others at the mitigation hearing, and considered its bearing on defendant's competency, but rejected the claim of psychogenic amnesia upon which defendant's claim of incompetency was based. Id. at 150. The Supreme Court added, moreover, that even if defendant had amnesia, the court did "not believe that appellant's amnesia alone denied him either the effective assistance of counsel or the opportunity to present a defense."Id. at 151.
 PCR Petition
In this proceeding defendant sought to circumvent the adverse results of his direct appeals. His PCR Petition argued generally,inter alia, that his three attorneys could have done more and that his three mental health experts would have benefitted from a more detailed mental history. His PCR Petition arguably presented some evidence outside the record that was allegedly unknown prior to his direct appeal. He presented affidavits from mental health experts, family, friends, and attorneys.[1]
Two of his three original mental health experts made statements they had not previously made during defendant's trial. Psychiatrist Bertschinger stated he did not have the report of state psychiatrist Billowitz or information concerning incidents involving defendant more than one year before the killings. Bertschinger believed this information would have shown that defendant was a paranoid schizophrenic who was actively psychotic and delusional. McPherson likewise said she did not have information about prior incidents and, as in her prior report, stated that further tests should have been done. His third expert, Althof, did not submit an affidavit. However, a newly retained fourth expert, psychologist Schmidtgoessling, asserted that defendant was incompetent, the defense should have further investigated his sanity, and defendant's paranoid psychotic disorder should have been presented in mitigation.
Several of defendant's family and friends also presented affidavits. Defendant's apparent theory was that they could have provided mental health experts with a more complete mental history of defendant. The family and friends stated they were not contacted by defense counsel. They did not state, however, whether they were contacted by his court-appointed investigator.
Most of the affidavits, moreover, did not state what information the witness would have provided if contacted before trial. Defendant's mother, step-father, and uncle did not mention what they would have said if contacted. A former co-worker of defendant who worked with him approximately six years before the murders stated simply that she would have testified if contacted before trial but would not testify now.
The remaining affidavits of family and friends provided little new information: (1) long-time friend Williamson stated that defendant appeared "crazy" when he told of a family fight months before the killings, (2) defendant's former wife stated counsel did not ask her about incidents two or three years before the killings, and (3) defendant's brother stated he was diagnosed with schizophrenia.
Finally, defendant also submitted affidavits from several attorneys who generally criticized the performance of defendant's three trial counsel. These affidavits are briefly summarized as follows: (1) Vickers complained about counsels' failure to obtain a written report from their investigator and the trial court's failure to order discovery in the PCR proceeding. (2) Walsh criticized defendant's appellate counsel. (3) Aarons criticized defense counsel generally and their acceptance of defendant's litigation requests specifically. (4) Finally, law professor Hickman, who acted as defendant's mitigation expert, stated that if he had more background information he would have recommended a different (unspecified) litigation strategy.
 Arguments on Appeal
The first, second, and third claims for relief in defendant's PCR Petition challenged the performance of counsel at the guilt and penalty phases of trial and the adequacy of legal and psychological expert assistance provided to establish defendant's incompetence, insanity, and factors to mitigate his crimes. The trial court noted that defendant raised these matters in his prior direct appeals. This court and the Supreme Court rejected the arguments then because the record did not support the claims.
Contrary to defendant's argument, it is not clear that the materials submitted in support of his PCR Petition reveal he was unable to sufficiently litigate his claims on direct appeal to bar the application of res judicata. See e.g., State v. Lawson
(1995), 103 Ohio App.3d 307, 314-315 (applying res judicata to bar claims of ineffective assistance of counsel concerning the litigation of a capital defendant's mental status in the context of a PCR Petition).
Defendant contends his claims could not have been fairly determined without resort to evidence outside the record. The only specific evidence submitted to support his contention, however, is that defendant exhibited unusual behavior during certain incidents years before the murders. This information does not appear to be new or unavailable in the original record in light of Billowitz's testimony that defendant's mental illness was "in remission." See id. In fact, the record shows that defense counsel, who is now alleged to be incompetent, elicited this information from Billowitz on cross-examination.
In any event, even if we accept all defendant's arguments to the contrary, the information in the affidavits submitted by him in support of his PCR Petition was not sufficient to warrant relief or an evidentiary hearing. The information is similar to that rejected in other cases denying PCR Petitions raising claims of ineffective assistance in litigating a capital defendant's mental status. New information that provides only "additional detail" to that presented at trial, State v. Williams (1991),74 Ohio App.3d 686, 695, or that is simply "cumulative or alternative" to that presented at trial does not provide grounds for relief. State v. Combs, supra at 98. Nor can one obtain relief simply by presenting a new expert opinion that is different from the theory used at trial. State v. Combs, supra at 103.
As noted in defendant's prior direct appeal, the standard governing claims of ineffective assistance of counsel has been summarized as follows:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
State v. Brooks, supra at 147, quoting Strickland v. Washington
(1984), 466 U.S. 668, 687. To establish prejudice, defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, supra at 694.
As a result of our review of the record as supplemented, we find defendant has failed to show that his three trial counsel provided constitutionally ineffective assistance under this standard. Defendant's related claim, moreover, that he was denied sufficient assistance of mental health experts is barred by res judicata because it could or should have been raised in his prior direct appeals based on the existing record. E.g., State v.Franklin (Jan. 25, 1995), Hamilton App. Nos. C-930760 and B-8804127, unreported at p. 3. Even if this argument were not barred, he was provided three competent, licensed experts at state expense and has not shown that he was denied sufficient assistance of mental health experts.
Defendant's request for a new trial is particularly misplaced in light of his litigation strategy in the trial court. The record shows that he placed limits on his trial counsel during the proceedings and now, after the adverse results, seeks another chance to relitigate the issues. In his direct appeal, this court stated as follows:
 Having effectively muzzled his counsel, appellant can not now be heard to complain that they were deficient in defending him.
State v. Brooks, supra (Pryatel, J., concurring); accord State v.Smith (1981), 3 Ohio App.3d 115.
Since his direct appeals, the Ohio Supreme Court has provided considerable insight into the principles governing claims of mental incompetency, sanity, mental impairment, and ineffective assistance of counsel in capital cases. State v. Berry (1995),72 Ohio St.3d 354 and State v. Berry (1997), 80 Ohio St.3d 371. The Supreme Court recognized, contrary to the Public Defender's argument in Berry and herein, well-established law that competent criminal defendants may, inter alia, choose to forego "even the strongest legal claim" or decide not to present any mitigating factors in the penalty phase of a capital case. State v. Berry,
supra, 80 Ohio St.3d at 384.
The record here is more compelling than in Berry because prior to trial in the case at bar the trial court conducted a hearing for the express purpose of determining defendant's competence to stand trial. After this hearing the trial court specifically determined, as set forth above, that defendant was, in fact, competent, that is, that he had sufficient ability to consult with his lawyers with a reasonable degree of rational understanding. State v. Berry, supra, 72 Ohio St.3d at 359. After the conclusion of the penalty phase, at which defendant presented additional information regarding his competency, the panel again found:
 Reginald A. Brooks, Sr. was legally sane at the time of the act and he was competent to stand trial.
(Opinion of the Trial Court at p. 16.)
As noted in the prior appeals, it is not ineffective assistance for counsel to accede to a mentally competent defendant's wishes after advising him of counsel's contrary opinion. See e.g., Statev. McNeill (1998), 83 Ohio St.3d 438, 451-452. This principle applies regardless of whether the claim involves the failure to present mitigating evidence in the penalty phase, id., or an insanity defense during the guilt phase. State v. Sneed (1992),63 Ohio St.3d 3, 16. Defendant stated on the record in open court that he agreed with his counsels' trial strategy. Accord State v.Phillips (1995), 74 Ohio St.3d 72, 85. Given that these limits foreclosed the issues about which he now complains, it is not surprising that counsel might not pursue all the additional, detailed information the Public Defender suggests was necessary for competent representation.
Defendant's fourth claim for relief in the PCR Petition was that the three-judge trial panel did not adequately safeguard his rights by requesting a second or third competency hearing, or a determination of his sanity. This argument recasts his ineffective assistance of counsel argument into an argument that the three-judge panel deprived him of his rights. Recast, this argument is no more persuasive, because it is not factually or legally supported.
The record shows that defendant was found to be competent prior to his trial by the three-judge panel and also that he was not insane, because the court found during sentencing that he had the capacity to appreciate the criminality of his actions and to conform his conduct to the law. Moreover, as noted by the Supreme Court in his direct appeal and contrary to defendant's argument, the trial court in fact re-considered defendant's competency in light of the mental health information presented during the penalty phase. (Opinion of the Trial Court at p. 20.) After the penalty phase, at which the trial court allowed him to present additional information regarding his competency, the panel found him to be competent to stand trial and legally sane. (Id. at p. 16.)
In Berry, the Supreme Court of Ohio rejected similar arguments, even though no competency hearing had ever been conducted by the trial court. State v. Berry, supra, 72 Ohio St.3d at 358-362. Except for wishing that the trial court found the facts differently, defendant has not specified what more the trial court could have done. The record shows, contrary to defendant's argument, that the trial court fully considered his claims of mental impairment. He has not submitted any evidence dehors the record to support his argument to the contrary. Under the circumstances, the trial court properly rejected this argument.
Defendant's fifth claim for relief raised claims of ineffective assistance of appellate counsel. The argument is premised on claims that his newly appointed appellate counsel failed to assert all the claims asserted in his PCR Petition. Because those claims lack merit for the reasons set forth throughout this opinion, appellate counsel was not deficient for failing to raise them. In any event, such claims are not cognizable in PCR proceedings. State v. Murnahan (1992), 63 Ohio St.3d 60, 64;State v. Combs, supra at 109.
Defendant's sixth claim for relief complained about the admission of "victim impact" evidence during the penalty phase of his trial. Such a claim is not cognizable in a PCR proceeding, because the presentation of such evidence does not constitute a constitutional violation, which is necessary to support a claim for post-conviction relief. State v. McNeill, supra,83 Ohio St. 3d at 447, citing Payne v. Tennessee (1991),501 U.S. 808.
Defendant's seventh claim for relief was denominated "state-assisted suicide." Counsel apparently claims that because defendant did not desire to litigate every potential issue, he manifested a desire to commit suicide. This claim is unpersuasive, particularly given defendant's failure to express any such desire. The Supreme Court of Ohio rejected a similar claim in Berry, even when the defendant had expressed a desire for death:
 As to appellant's expressed preference for the death penalty, such a sentence could be deemed preferential to life imprisonment for this appellant. A professed wish for the death penalty (as opposed to a lifelong term of imprisonment) does not, by itself, call the defendant's competence into question. Similarly, appellant's failure to cooperate with counsel does not indicate that appellant was incapable of assisting in his defense.
State v. Berry, supra, 72 Ohio St.3d at 361. Under the circumstances, the trial court properly rejected this claim.
Defendant's eighth claim for relief challenged the trial court's failure to order various discovery during the proceedings on his PCR Petition. Defendant has failed to show, however, that he was denied any discovery to which he was entitled. See Statev. Apanovitch (1995), 107 Ohio App.3d 96-98, citing State v. Lott
(Nov. 3, 1994), Cuyahoga App. Nos. 66388-66390, unreported at pp. 14-15; see also State v. Smith (1986), 30 Ohio App.3d 138, 140.
Finally, defendant's ninth claim for relief was that he was not mentally competent to assist counsel in advancing the claims asserted in his PCR Petition. As noted above, however, PCR Petitions must allege constitutional deprivations that render the judgment or sentence void or voidable under the United States or Ohio Constitutions.
The trial court found defendant competent to stand trial. None of the evidence submitted by defendant with the PCR Petition alters this finding or renders his original judgment or sentence void or voidable on constitutional grounds. To the extent that the material supports a claim of incompetency arising after his conviction, the claim is not cognizable in PCR proceedings and must be raised in some other manner. See State v. Berry, supra,80 Ohio St.3d 371; State v. Powell (1993), 90 App.3d 260, 264-265.
Accordingly, defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J., and ANNE L. KILBANE, J., CONCUR.
 ______________________________ DIANE KARPINSKI JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also S.Ct.Prac.R. II, Section 2(A)(1).
[1] Defendant also submitted affidavits from Utah police officers stating that defendant was a model prisoner while incarcerated when he was arrested after the murders. He argues that this information should have been presented to mitigate his mass murder of his three sons. He ignores that he lied to the police when he denied using the luggage containing the murder weapon. In any event, it takes quite a stretch of imagination to argue that (1) failure to present these affidavits was a deficiency of such proportion that three counsel failed to function as counsel and (2) the presence of such information would have resulted in a lesser sentence.