Please Note: We have sua sponte removed this case from the accelerated calendar.
 OPINION.
Appellant James Harrod was charged with three counts of gross sexual imposition involving a child less than thirteen years of age.[1] Attached to each count was a sexually-violent-predator specification. Following a bench trial, the trial court recorded a judgment entry that stated Harrod had been found guilty of one count of "gross sexual imposition with specification." It also adjudicated him a sexual predator and recorded a separate entry as to that adjudication. The trial court sentenced Harrod to two years' incarceration. The trial court dismissed the other counts and specifications.
Harrod appeals his conviction, raising five assignments of error: (1) that the convictions for both the underlying offense and the specification were not supported by sufficient evidence; (2) that his convictions were against the weight of the evidence; (3) that his sexual-predator adjudication was contrary to law; (4) that he had ineffective assistance of counsel; and (5) that the trial court erroneously admitted hearsay evidence.
 Sufficiency of the Evidence
Harrod's daughter invited her eight-year-old friend to her house to play. The friend called to make sure that the invitation was still open. At that time her mother spoke with Harrod, who assured her that her daughter could come over. The mother drove her daughter to Harrod's house, several blocks away, and dropped her off.
Unbeknownst to the mother and the daughter, Harrod was the only person at home. After she entered the house, Harrod eventually asked the child into his bedroom, where he had her sit on his lap, and then kissed, hugged, and fondled her. The child ran to the telephone and begged her mother to come get her. Her mother quickly returned to Harrod's house, where she observed her daughter pacing in front. When she asked her daughter what had happened, the daughter would not tell her until they were away from the house.
Upon learning that Harrod had tried to pull her daughter into bed with him, the mother returned to Harrod's house and confronted him. He hit her. She returned to the car and drove her daughter home. Once there, the daughter provided her mother with more details of what had occurred. The mother called the police and Harrod was arrested.
 Gross Sexual Imposition
Harrod argues that his conviction for gross sexual imposition was not supported by sufficient evidence. In particular, he claims that the state failed to prove the element of sexual contact with the eight-year-old child.
In reviewing Harrod's sufficiency-of-the-evidence claim, we must examine the evidence presented at trial and determine whether the evidence, viewed in a light most favorable to the state, would have convinced any rational trier of fact that Harrod was guilty of gross sexual imposition beyond a reasonable doubt.[2]
Gross sexual imposition requires proof of sexual contact with a person who is not the offender's spouse when the other person is less than thirteen years of age.[3] "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or * * * breast, for the purpose of sexually arousing or gratifying either person."[4]
The prosecutor asked the child where Harrod's hands were when she was in the bedroom. She did not respond. The trial court then asked if Harrod had touched her. When she responded that he had, the trial court asked her to point to where Harrod touched her. The child pointed to her chest, breast area, the area between her legs, and her buttocks area. She later testified that Harrod touched her close to her vagina. We believe that the testimony was sufficient to demonstrate "sexual contact." We overrule that part of Harrod's assignment concerning the conviction for gross sexual imposition.
 The Sexually-Violent-Predator Specification
We next address Harrod's concerns about the sexually-violent-predator specification. As reported in the transcript of the trial, the trial court stated,
 I find beyond a reasonable doubt Mr. Harrod is guilty of Count Number 1, which is gross sexual imposition, a felony of the third degree. I also find by clear and convincing evidence that he is guilty of the specification to Count Number 1, that's being a sexual predator. If beyond a reasonable doubt is needed for that determination, I find him a sexual predator beyond a reasonable doubt, but I think it is only clear and convincing evidence.
At the sentencing hearing, the trial court reiterated that it had found Harrod guilty of "a specification of sexual predator." It then stated,
 Based upon all of that, the sentence of the Court is two years in prison and pay the costs. You've been in jail for 61 days, so you have 61 days credit for time served.
 But since you've been found to be a sexual predator, you're going to have to — for the rest of your life you're going to have to register every 90 days with the Hamilton County Sheriff's Office when you get out of prison.
The court then had Harrod complete a form.
The sentencing entry states that Harrod had been found guilty of the first count of gross sexual imposition "with specification." His sentence orders that he be confined for two years with sixty-one days' credit. It also states that he is "found to be a sexual predator."
The state concedes that that the trial court's finding as to the sexually-violent-predator specification was improper because the trial court was proceeding under R.C. Chapter 2950 and not R.C. Chapter 2971. From its statements in the transcript (identifying the specification as a sexual-predator specification and the burden of proof as clear and convincing) and the sentence it imposed (one that did not provide for an indefinite prison term as required under R.C. 2971.03[A][3]), we agree that the trial court did not comply with R.C. Chapter 2971, the statute that applies to the sentencing of sexually violent predators. We attribute this situation to understandable confusion between the sexual-predator specification and the sexual-predatorclassification.
The sexually-violent-predator specification is found in R.C.2971.01(I). The specification may be attached only to a violent sex offense, or a designated homicide, assault, or kidnapping offense.[5] Gross sexual imposition of a child under thirteen years of age is a violent sex offense to which the specification may be attached.[6] Further, once a defendant is convicted of a sexually violent offense and a sexually-violent-predator specification that was included in the indictment, the conviction for the specification results in the defendant automatically being classified as a sexual predator.[7]
For an offender to be found guilty of the sexually-violent-predator specification, the state must prove not only that the offender committed a violent sex offense, but also that he or she "is likely to engage in the future in one or more sexually violent offenses."[8]
A variety of statutory factors may be used to meet the state's burden of proof.[9] If both of the elements are proven, an offender's penalty may be enhanced to include penalties ranging from life without parole[10] to indefinite sentences consisting of not less than two years and a maximum term of life imprisonment.[11]
Further, both judicial release and parole are prohibited.[12]
The Ohio Supreme Court explained in State v. Manley[13]
that "[t]he state has the burden of establishing all material elements of a crime by proof beyond a reasonable doubt. [Citations deleted.] That requirement also applies in cases involving the enhanced punishment upon proof of some additional element. [Citations deleted.]" Because the sexually-violent-predator specification implicates "penalty provisions which enhance an offender's sentence," the specification, like other specifications, must be "determined by proof beyond a reasonable doubt."[14]
This court stated in State v. Baxley,[15]
 R.C. 2971.01(H) sets forth the factors to be considered in determining whether a person is a sexually violent predator; at least two prior convictions for sexually-oriented offenses; a documented history from childhood of sexually deviant behavior; chronic commission of offenses with a sexual motivation; commission of at least two offenses in which the defendant tortured or engaged in other ritualistic acts with one or more victims; commission of at least two offenses in which at least one victim was physically harmed to the extent that the victim's life was in jeopardy; and other "relevant evidence."
 [T]he statute anticipates that the determination of the specification will take place in a proceeding after the defendant has been found guilty of the underlying offense. See R.C. 2971.02. Nothing in the record suggests that the evidence of the above factors existed or that the court considered them.
Unlike Baxley, in this case there is no clear inconsistency between the journalized judgment entry and the trial court's articulations on the record. The trial court's journal entry states a guilty finding of "gross sexual imposition with specification."
Harrod contends that the evidence was insufficient to support a conviction on the sexually-violent-predator specification. Whether the evidence was sufficient to sustain a conviction is a question of law.[16] A determination that the evidence is inadequate to sustain the conviction as a matter of law, in essence, constitutes an acquittal on the charge.[17] The record reflects that, other than the evidence presented in support of the underlying charge, no evidence was presented to demonstrate that Harrod is likely to engage in the future in one or more sexually violent offenses. As the state concedes, this "finding" must be vacated, and a finding of not guilty entered. Thus, we sustain Harrod's assignment as it relates to the specification.
We also must vacate the trial court's determination as stated in the judgment entry that Harrod is a sexual predator under the authority of State v. Macht.[18] In Macht, this court explained that where a defendant is convicted of a sexually violent offense after January 1, 1997, and acquitted of the attached sexually-violent-predator specification, R.C. 2950.09(A), (B), and (C) cannot be used to classify the defendant as a sexual predator. While this result seems somewhat anomalous, it is clearly required by the statute.
Our determination that the trial court was precluded from adjudicating Harrod a sexual predator, however, does not affect his statutory duty to register as a sexually-oriented offender. As correctly noted in the state's brief (which admirably concedes the errors we have found above), the status of being a sexually-oriented offender is a status arising by operation of law, and not by any adjudication by the trial court. "Under R.C. Chapter 2950, all convicted sexual offenders are required to register at least yearly for a minimum of ten years."[19]
Because we conclude that the trial court's determination that Harrod was guilty of the violent-sexual-predator specification was not supported by sufficient evidence, we need not address that portion of Harrod's second and fourth assignments relating to the specification, or Harrod's third assignment.
 II. Weight of the Evidence
Harrod contends that his conviction for gross sexual imposition was against the weight of the evidence. To reverse a conviction as against the manifest weight of the evidence, we must weigh the evidence and all reasonable inferences, consider witness credibility, and determine that, in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.[20] Our role has been defined as that of a "thirteenth juror," which allows us to reverse in an exceptional case where we disagree with the "factfinder's resolution of the conflicting testimony."[21] Although we recognize that Harrod's testimony and the child's testimony were conflicting, upon applying the applicable standard of review, we conclude that the trial court did not lose its way and create a manifest miscarriage of justice when resolving the conflicting evidence.
 Ineffective Assistance of Counsel
In his fourth assignment, Harrod asserts that he was denied effective assistance of counsel because his counsel failed to file a motion to suppress a statement in which he expressed remorse, as well as his admissions to police officers that he gave the child a hug and kissed her cheek.
Cincinnati Police Officer Paul Graves testified that while he was walking Harrod to the interview room, Harrod, unsolicited, offered the comment "I'm sorry, I'm sorry." Upon entering the room, Officer Graves advised Harrod of his Miranda
rights (which advice had already been provided by another officer) and, in response to a comment made to him by Harrod, asked him if he had been drinking. Harrod stated that he had drunk two six packs of beer. Graves asked Harrod what had happened, and Harrod stated that he had kissed the child on the cheek and given her a hug. Cincinnati Police Officer Michael Miller, who subsequently interviewed Harrod, testified that Harrod said that he had kissed the child and hugged her, and that he had made the unsolicited statement "I'm sorry" to Graves.
Harrod argues that he was denied effective assistance of counsel because his attorney should have moved to suppress the statements because they had been given involuntarily due to his intoxication. To prevail on this assignment, Harrod "must demonstrate that his trial counsel substantially violated an essential duty owed to him and that this deficiency prejudiced his defense."[22] Prejudice requires a showing by Harrod that "he was denied some substantive or procedural right that made the `trial unreliable or the proceeding fundamentally unfair.'"[23] It is presumed that a properly licensed attorney is competent and Harrod has the burden to demonstrate otherwise.[24] Further, Harrod must overcome the presumption that counsel's failure to file a motion to suppress might be considered sound trial strategy.[25]
Having reviewed the record, we cannot say that Harrod's counsel fell below an objective standard of reasonableness or that, because of counsel's alleged error, the proceedings were fundamentally unreliable or unfair. Harrod's alleged apology was not the result of any police interrogation, but was provided by his own initiative in the absence of any questioning. Thus, there was no constitutional violation to challenge. As to Harrod's statements that he had kissed and hugged the child, Harrod testified at trial that he hugged her. The child testified that he kissed her on the check and hugged her.
Harrod has failed to show that the exclusion of his statements that he hugged and kissed the child would have changed the result of the trial. Other evidence existed that would have led the trial court to the same result without the statements. In fact, in rendering its decision, the trial court made no reference to its consideration of the police officers' testimony, and instead indicated its reliance on the child's testimony and her mother's testimony. Harrod's fourth assignment is overruled.
 Excited Utterance
Harrod argues in his last assignment that the testimony of the child's mother about what the child had said was inadmissible hearsay. The trial court allowed the testimony as an excited utterance, an exception to the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[26] To qualify as an admissible excited utterance, a statement must be made while the declarant is still under the stress of the startling occurrence; it must not be the result of reflective thought.[27] The passage of time between the startling occurrence and the statement is relevant because it may demonstrate that an exclamation has resulted from reflective thought. This must be considered on a case-by-case basis.[28] There is a "trend of liberalizing the requirements for an excited utterance when applied to young children who are the victims of sexual assault [that] is also based on the recognition of their limited reflective powers. Inability to fully reflect makes it likely that the statements are trustworthy."[29]
The child's mother testified that she received a telephone call from her daughter about ten minutes after she left Harrod's house. She described the daughter as hysterical, crying, and sobbing, and the daughter begged her mother to pick her up. The mother left immediately after receiving the call and saw the daughter pacing outside Harrod's house. She asked her daughter what was the matter, and her daughter said, "Just get me out of here. I'll tell you when I get home". On the way home, the daughter told her mother that Harrod had grabbed her and tried to pull her on the bed with him, and that he had exposed himself to her. The mother turned the car around and returned to Harrod's house, where she confronted him. Harrod hit her. She left Harrod's house and returned home. She rushed in and told her husband what had occurred. She asked her daughter what had happened and the daughter, while sitting on her lap with her head against her mother's chest, told her that Harrod had grabbed her buttocks and the area between her legs. The mother called the police at that point. Based on these facts, we cannot conclude that the trial court erred by admitting, as an excited utterance, the mother's testimony of her daughter's out-of-court statement.[30] Harrod's fifth assignment is overruled.
 V. Conclusion
Therefore, the judgment of the trial court convicting Harrod of gross sexual imposition is affirmed. The trial court's judgment finding Harrod guilty of the attached specification and adjudicating him a sexual predator is reversed and this cause is remanded for the appropriate correction of the trial court's record in accordance with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 Hildebrandt, P.J., and Gorman, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] R.C. 2907.05(A)(4).
[2] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[3] See R.C. 2907.05(A)(4).
[4] R.C. 2907.01(B).
[5] R.C. 2941.148(A).
[6] R.C. 2971.01(L)(1).
[7] R.C. 2950.09(A).
[8] R.C. 2971.01(H).
[9] R.C. 2971.01(H)(2)(a) through (f).
[10] R.C. 2971.03(A)(1), (2), and (4).
[11] R.C. 2971.03(A)(3).
[12] R.C. 2971.03(C).
[13] State v. Manley (1994), 71 Ohio St.3d 342, 346,643 N.E.2d 1107, 1110.
[14] State v. Ward (Jan. 28, 1999), Cuyahoga App. No. 72371, unreported; see State v. Leftridge (Apr. 1, 1999), Cuyahoga App. No. 73029, unreported.
[15] State v. Baxley (July 2, 1998), Hamilton App. No. C-970539, unreported.
[16] State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546.
[17] See State v. Thompkins, supra, at 388-389,678 N.E.2d at 547, quoting Tibbs v. Florida (1982), 457 U.S. 31, 41-43,102 S.Ct. 2211, 2218-2219.
[18] State v. Macht (June 11, 1999), Hamilton App. No. C-980676, unreported.
[19] State v. Brewer (1999), 86 Ohio St.3d 160, 163,712 N.E.2d 736, 739.
[20] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
[21] State v. Thompkins, supra, at 388, 678 N.E.2d at 547.
[22] State v. Juarez (July 17, 1998), Hamilton App. No. C-970368, unreported, citing Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052.
[23] State v. Combs (1994), 100 Ohio App.3d 90, 101,652 N.E.2d 205, 211-212, quoting Lockhart v. Fretwell (1993), 506 U.S. 364,370, 113 S.Ct. 838, 844.
[24] See State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156,524 N.E.2d 476, 479.
[25] Strickland v. Washington (1984), 466 U.S. 668, 689,104 S.Ct. 2052, 2065.
[26] Evid.R. 803(2).
[27] See Potter v. Baker (1955), 162 Ohio St. 488,124 N.E.2d 140, paragraph two of the syllabus.
[28] State v. Duncan (1978), 53 Ohio St.2d 215, 219-220,373 N.E.2d 1234, 1237.
[29] State v. Taylor (1993), 66 Ohio St.3d 295, 305,612 N.E.2d 316, 323.
[30] See State v. Boston (1989), 46 Ohio St.3d 108,545 N.E.2d 1220, modified on other grounds by State v. Dever
(1992), 64 Ohio St.3d 401, 596 N.E.2d 436.