OPINION
This matter comes before the court on appeal from the dismissal of the defendant's motion for postconviction relief. Defendant raises the following assignments of error:
 [I.] The trial court erred in dismissing appellant's postconviction petition, where he presented sufficient operative facts to merit an evidentiary hearing and discovery.
 [II.] Ohio's postconviction procedures neither afford an adequate corrective process nor comply with Due Process or Equal Protection under the Fourteenth Amendment.
 [III.] Considered together, the cumulative error set forth in appellant's substantive grounds for relief merit reversal or remand for a proper postconviction process.
On May 10, 1997, Andre Brooks and his sister, Condrea Webber, went with friends to the "CNS Lounge." At or about closing time, Andre and Condrea left the CNS Lounge, and went to an "after hours" club known as the "FH Bar and Grill." Andre liked to wear a lot of gold jewelry, and that night he was wearing at least five gold necklaces.
At about 3:30 a.m., Andre followed Condrea outside, and the two walked toward Condrea's car to make the drive home. However, defendant, Ulysses Murphy, followed them out of the bar, approached them from behind brandishing a handgun, and demanded that they give him their money and jewelry. In an act which probably saved Condrea's life, Andre convinced defendant to allow his sister to get into the car. She did so and watched defendant continue to threaten Andre at gunpoint. According to Condrea, defendant was becoming more and more agitated with the speed with which Andre was removing his jewelry, until finally, defendant took a step back and shot Andre in the chest. Defendant then fired two more shots toward Andre as Condrea fled the scene. However, she soon returned and found that police had secured the area as paramedics transported Andre to the emergency room where he later died. Andre had been shot twice, once in his left chest, and once in the lower back. Both wounds were determined by the coroner to be fatal.
At the hospital Condrea identified defendant from a random photo array shown to her by the police. Meanwhile, defendant hid his handgun under the hood of his car and fled the area. The next morning defendant sold his gun to a drug dealer in order to "get rid of it." He was arrested later that same day.
Although they were not able to recover defendant's pistol, crime scene investigators recovered three spent shell casings. Subsequent testing revealed that each casing had been fired from the same weapon. Additionally, two projectiles were removed from Andre's body, each was tested, and both were found to have been fired from the same weapon.
On May 21, 1997, defendant was indicted and charged with one count of aggravated murder, one count of aggravated robbery, and one count of having a weapon while under disability. After lengthy pretrial proceedings, defendant was tried to a jury on May 1, 1998. On May 13, 1998, the jury found defendant guilty of all three counts contained in the indictment. Thereafter, the trial court accepted the jury's penalty recommendation and sentenced defendant to death for committing aggravated murder, ten years' incarceration for committing aggravated robbery, and an additional three years for the use of a firearm.
On August 5, 1998, defendant filed a notice of direct appeal to the Ohio Supreme Court. Defendant currently awaits a ruling on that appeal. In the meantime, on May 5, 1999, defendant also filed a petition for postconviction relief with the Franklin County Court of Common Pleas. The trial court denied that petition without a hearing on February 1, 2000, and the matter is now before this court on appeal.
In his first assignment of error, defendant insists the trial court should have held an evidentiary hearing before ruling on his petition for postconviction relief.
A petition for postconviction relief is a statutory vehicle designed to correct the violation of a defendant's constitutional rights. R.C.2953.21(A)(1) provides that:
 Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed the sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.
Although designed to address claimed constitutional violations, the postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Steffen (1994),70 Ohio St.3d 399. It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. Clearly then, a petition for postconviction relief does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. State v. Jackson (1980),64 Ohio St.2d 107.
To warrant a hearing, a petitioner must first provide evidence which demonstrates a cognizable claim of constitutional error. R.C. 2953.21(C). That evidence must show that the denial or infringement of the petitioner's rights renders the petitioner's conviction and sentence void, or voidable, under the Ohio and/or United States Constitutions.State v. Perry (1967), 10 Ohio St.2d 175. If the petitioner fails to submit evidentiary materials which facially demonstrate such an error, the court may deny the petition without a hearing. Jackson, supra.
Further, the doctrine of res judicata requires that the evidence presented in support of the petition come from outside, or "dehors," the record. In State v. Cole (1982), 2 Ohio St.3d 112, the Ohio Supreme Court explained:
 "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment." [Id. at 113, quoting State v. Perry, paragraph nine of the syllabus.]
In accordance with doctrine of res judicata set forth in Cole, constitutional issues cannot be considered in postconviction proceedings where those issues should have been raised on direct appeal and where the issues may be fairly determined without resort to evidence dehors the record. Cole, supra, at 112. See, also, State v. Milanovich (1975),42 Ohio St.2d 46, holding that issues properly before a court on a petition for postconviction relief are issues which could not have been raised on direct appeal due to the fact that the evidence supporting those issues can only be found outside of the record.
Res judicata also implicitly prohibits a petitioner from "re-packaging" evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal. State v. Lawson
(1995), 103 Ohio App.3d 307, 315. This means that the evidence relied upon must not be evidence which was in existence or available for use at the time of trial or direct appeal, and finally, cannot be merely cumulative of the evidence already presented. Id. at 315.
Most of the allegations raised in the defendant's petition are claims of ineffective assistance of counsel. The standard governing claims of ineffective assistance of counsel under both the federal and Ohio constitutions is clear. When a convicted defendant alleges that he or she has received ineffective representation, the defendant must show: (1) that counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution; and (2) that counsel's errors prejudiced defendant depriving him or her of a trial whose result is reliable.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, certiorari denied in Bradley v. Ohio
(1990), 497 U.S. 1011, 110 S.Ct. 3258. In the context of a petition for postconviction relief, "the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." Cole, supra, at 114. See, also, State v. Pankey (1981), 68 Ohio St.2d 58.
In Bradley, the Ohio Supreme Court explained that there are countless ways to provide effective assistance in any given case. Id. at 142. As such, the Supreme Court recognized that "'j]udicial scrutiny of counsel's performance must be highly deferential,'" such that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional representation. Id. Moreover, even assuming counsel's performance was ineffective, an error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction unless it can be shown that, but for counsel's unprofessional error, the result of the proceeding would have been different. Strickland, supra.
In this case, defendant's claims primarily raise issues which may fairly and accurately be determined by reference to the record of this proceeding. While defendant attempts to disguise these claims as claims which could not have been raised at trial, on appeal, and as claims which are based upon evidence outside of the record, we find to the contrary.
Defendant's claim criticizing trial counsel's method of conducting voir dire; defendant's claim arguing counsel should have objected to the instructions given to the jury; defendant's claim contending that counsel presented a theory of defense contrary to his wishes and failed to ensure defendant's presence at all proceedings; defendant's claim alleging that counsel failed to ask the court to remove a juror who was allegedly asleep during trial; defendant's claim arguing counsel failed to inform him of his right to make an unsworn statement to the jury; defendant's claim asserting that counsel proposed erroneous jury instructions during the penalty phase of trial; and defendant's claim asserting that counsel failed to coach or prepare a defense expert witness; are all claims which are supported by reference to the transcript of this proceeding and are capable of being fairly determined without resort to evidence dehors the record.
Defendant also alleges trial counsel was ineffective for failing to present additional evidence regarding defendant's history of substance abuse, as well as additional evidence of the amount of alcohol defendant consumed prior to murdering Andre Brooks.[1] In support, defendant provides affidavits from several individuals who are of the opinion that defendant was under the influence of alcohol on the evening of May 10, 1997. However, these witnesses were clearly available at the time of trial, and the submission of their affidavits now does not constitute evidence dehors the record. However, even if this particular argument was not res judicata, defendant is unable to show that he was prejudiced by trial counsel's decision not to provide additional evidence of intoxication as Ohio does not recognize a defense of diminished capacity. State v. Jackson (1972), 32 Ohio St.2d 203; State v. Wilcox
(1982), 70 Ohio St.2d 182; and State v. Huertas (1990), 51 Ohio St.3d 22. Accordingly, the trial court did not err in denying this claim without a hearing.
In several of his other claims, defendant asserts trial counsel should have presented additional evidence in mitigation of penalty. During the course of the mitigation hearing, defense counsel called defendant's mother, father, and paternal grandmother, as well as professional witnesses who testified regarding the defendant's appalling childhood. In its opinion, the trial court summarized the testimony of the nonfamilial witnesses as follows:
 * * * Jane Bowman, a former school nurse, testified to finding children left alone when she made a home visit when Defendant was five years old. She further described deplorable housekeeping standards. (Tr. Vol. XI, 1326-1329.) John Rice, a school social worker, testified to making a referral to Franklin County Children's Services because he found young children left alone in the Murphy home. (Tr. Vol. XI, 1341-45.) Gail Peterson, a supervisor at Franklin County Children's Services testified to that agency's involvement with the family and the neglectful conditions in the home.
 Valerie Thomas, a Franklin County Children's Services caseworker for the family testified that Mrs. Murphy's parenting skills had always been "marginal" and that she had not been able to "effectively parent over the years." (Tr. Vol. XI, 1372.) She further testified that Defendant was left to his own devices. (Tr. Vol. XI, 1374-1378). Patricia Brown, Defendant's sixth grade teacher, testified that Defendant was not a happy child and neither parent ever came to conferences or kept in contact with the school. (Tr. Vol. XI, 1399-1403.) Finally, counsel called a former neighbor to testify that Defendant's mother frequently locked her unattended children in the house and that Defendant frequently came to her house requesting food. (Tr. Vol. XI, 1406-1410.)
As with the previous claims, the trial court properly found no reason this claim cannot be fairly determined from the record on direct appeal. Additionally, the evidence defendant now wishes to submit is largely cumulative of that presented at trial; whereas under State v. Combs
(1994), 100 Ohio App.3d 90, affidavits establishing additional evidence of a petitioner's theory of mitigation, or which establish alternative theories of mitigation, generally fail to establish a constitutional claim of ineffective assistance of counsel. While defendant is correct in arguing that he is entitled to effective counsel, "effective counsel" does not guarantee acquittal.
Defendant also faults trial counsel for failing to "prepare" his mother and father prior to each being called to testify at trial. In support of this allegation, defendant offers affidavits from his parents which reiterate the testimony elicited at trial from his mother and father, in addition to his paternal grandmother and other experts, showing that the defendant was raised in an abusive and neglectful home. We doubt defendant intends to claim that trial counsel was ineffective for failing to "coach" or "prepare" the content of his parents' testimony. Instead, it appears that defendant maintains that trial counsel failed to pursue avenues of examination which the defendant now believes would have elicited "profoundly mitigating information." However, the extrinsic evidentiary material submitted in support of this claim fails to approach a showing that trial counsel failed to function as counsel guaranteed by the Sixth Amendment, or committed errors in professional judgment "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, supra, at 687.
Defendant's list of violated constitutional rights also contains a claim that counsel was ineffective for failing to argue in mitigation of penalty that he is a loving father. However, as explained in Combs,supra, the existence of an additional or alternative theory of mitigation does not establish ineffective assistance of counsel.
Defendant also takes issue with trial counsel's failure to call "substance abuse" and "cultural" experts. However, the defendant again fails to show that these experts would offer any more than alternative or additional theories of mitigation. As noted, a petition for postconviction relief does not provide the defendant with a second opportunity to litigate his conviction, nor does the submission of a new expert opinion containing a theory of mitigation different from the one presented at trial show ineffective assistance of counsel.
Moreover, in State v. Slagle (1992), 65 Ohio St.3d 597, the Ohio Supreme Court wrote the following in response to a claim that substance abuse should qualify as a mitigating factor.
 * * * [V]oluntary drunkenness and drug use are not mitigating factors. It is a fact that "more than one-half of all murderers are believed to have been intoxicated at the time of the act." * * * Such voluntary conduct should not reduce the punishment imposed by law. [Id. at 614; citations omitted.]
Defendant also cites trial counsel for failing to retain a "cultural expert." This expert, defendant avers, would offer testimony of the "cultural nullification that has occurred in African-American society and the dysfunction associated" with African-American families. In essence, defendant argues that trial counsel was ineffective for failing to present "expert" testimony that cultural stereotypes are true, and that because the defendant suffered under a stereotype, that his sentence should be more lenient. We agree fully with the prosecutor's observation that "[e]ncouraging jurors to decide a defendant's sentence based on conclusions about groups of people, delineated by race or ethnicity, is [an] anathema to individualized sentencing. Sentencing in capital cases should be about the crime and the individual characteristics of the defendant. There is no room for group guilt or group mitigation." (State's Brief at 35.)
Finally, defendant claims that trial counsel failed to adequately present background information to the defendant's clinical psychologist. However, the fact that the defendant submits an affidavit from his expert after trial stating that she would now modify her opinion if the facts had changed or if she had uncovered different and/or additional facts, fails to set forth a cognizable claim of ineffective assistance of counsel.
In conclusion, the claims raised in defendant's first assignment of error are claims which may be fairly determined from the existing record, are claims which argue that trial counsel should have presented additional or alternative evidence and testimony, are claims which posit alternative theories of mitigation and are also claims which disagree with counsel's trial strategy. Under the circumstances of this case and record, the trial court properly denied these claims without conducting a full evidentiary hearing. As such, defendant's first assignment of error is overruled.
In his second assignment of error, defendant generally attacks the adequacy and constitutionality of Ohio's postconviction relief statute, arguing the process is an exercise in futility. The party seeking to have a statute declared unconstitutional bears the burden of proving beyond a reasonable doubt that the statute and a particular constitutional provision are incompatible. State v. Thompkins (1996),75 Ohio St.3d 558, 560. Such a party must also overcome the maxim that all doubts regarding the validity of a statute are to be resolved in favor of a finding of constitutionality. State v. Gill (1992),63 Ohio St.3d 53, 55.
A petition for postconviction relief is a statutory right, not a constitutional right. This is true even in a capital case such as this.Steffen, supra. Consequently, the postconviction statute is valid on due process grounds so long as it bears a real and substantial relation to the public health, safety, morals or general welfare of the public, and so long as it is not unreasonable or arbitrary. Mominee v. Scherbarth
(1986), 28 Ohio St.3d 270, 274.
Likewise, the statute may not be found to violate equal protection unless it fails to bear a rational relation to a legitimate state interest. Schwan v. Riverside Methodist Hosp. (1983), 6 Ohio St.3d 300,301. In this case, defendant's general assertion that the pursuit of a postconviction petition is a futile exercise is insufficient to overcome the presumptive constitutionality of the statute. As such, defendant's second assignment of error is overruled.
Lastly, in his third and final assignment of error, defendant urges us to focus on the totality of trial counsel's representation in order to conclude that counsel was ineffective. As noted, in order to obtain a hearing on his claims of ineffective assistance, defendant must show that counsel's performance was unreasonable, and that a reasonable probability exists that but for counsel's errors, the verdict would have been different. As we explained in defendant's first assignment of error, the evidence dehors the record does not establish that trial counsel's performance fell below an objective standard of reasonable representation. Furthermore, the cumulative effect of counsel's alleged errors, if any, is not so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Strickland, supra.
Therefore, the defendant's third assignment of error is also overruled.
Having overruled each of the defendant's assignments of error, we hereby affirm the dismissal of the defendant's petition for postconviction relief by the Franklin County Court of Common Pleas.
KENNEDY and McCORMAC, JJ., concur.
 McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] As noted by the trial court, the trial transcript contains a considerable amount of evidence of the defendant's intoxication and history of substance abuse.