DECISION.
Edward Oluranti Idowu appeals from the judgment of the trial court denying his motion to withdraw his guilty plea. We affirm the trial court's judgment.
Idowu was indicted for three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1), and one count of rape, in violation of R.C. 2907.02(A)(2). On September 22, 2000, as a result of a plea bargain, Idowu entered guilty pleas to two counts of gross sexual imposition, and the state dismissed the remaining charges. On October 26, 2000, Idowu was sentenced to five years' community control. Idowu failed to file a direct appeal.
On April 19, 2001, Idowu filed a motion for leave to withdraw his guilty pleas or, alternatively, to vacate the trial court's judgment and sentence. Counsel for Idowu had not represented him at the time he was convicted pursuant to the guilty pleas.
In his motion, Idowu, a Nigerian citizen, alleged that the trial court had failed to personally advise him of the deportation consequences of his guilty pleas, as required by R.C. 2943.031. Idowu also argued that his pleas had been entered unknowingly and involuntarily because of the failure of his earlier counsel and the trial court to ensure that he understood the consequences of his pleas.
The trial court denied Idowu's motion. The trial court determined that Idowu had initialed his plea form to indicate that he was not a citizen of the United States. Furthermore, the court found that the plea form had clearly set forth the possibility that Idowu might face deportation as a result of his guilty pleas.
I. Characterization of Idowu's Motion
Initially, we note that Idowu's motion was filed after the time for filing his direct appeal had expired. This court and others have held that where a defendant moves to withdraw his guilty plea claiming a violation of his constitutional rights after the time for filing a direct appeal has expired, the motion is essentially one for postconviction relief under R.C. 2953.21.[1] R.C. 2953.21 allows a defendant to file a petition asking the sentencing court to vacate the judgment or sentence where the defendant claims that there was such an infringement of his constitutional rights as to render the judgment void or voidable.
Where no direct appeal has been filed, the petition for postconviction relief must be filed no later than one hundred eighty days after the expiration of the time for filing the appeal. A few Ohio courts have held that the time constraints of R.C. 2953.21 and 2953.23 should not apply to motions to withdraw guilty pleas, such as in the cases of State v.Cale[2] and State v. Talley.[3] The Supreme Court of Ohio has certified at least two cases as being in conflict with Cale and Talley on the issue of whether a motion pursuant to Crim.R. 32.1 is subject to the time constraints contained in R.C. 2953.21 and 2953.23 and must therefore be treated as a petition for postconviction relief, when the time for direct appeal has passed and the motion is based on alleged constitutional violations. These cases are currently pending before the Ohio Supreme Court.[4]
Idowu's motion was based upon a claim that his pleas had not been entered knowingly and voluntarily because of the failure of the court to personally inform him of the deportation consequences. The Due Process Clause of the United States Constitution mandates that a guilty plea be entered knowingly and voluntarily.[5] "It logically follows then that an assertion that a guilty plea was not entered knowingly or intelligently is constitutional in nature."[6] Furthermore, Idowu's claim that his lawyer failed to inform him that he would be deported as a result of his pleas implicated Idowu's Sixth Amendment right to the effective assistance of counsel.
Accordingly, although Idowu styled his motion below as one to withdraw his guilty pleas, we conclude that the substance and timing of his motion made it a petition for postconviction relief under R.C. 2953.21, on the authority of State v. Hill, supra. Construed as a postconviction petition, Idowu's motion was timely filed within the one-hundred-eighty-day limit.
II. Criminal Rule 11(C)(2)
In his first assignment of error, Idowu claims that the trial court violated Crim.R. 11(C)(2) because it had not advised him unambiguously about the consequences of his pleas. Crim.R. 11(C)(2) provides,
 In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
 Idowu claims that he did not understand the consequences of his pleas because he did not know that his pleas made him deportable. But the record demonstrates that Idowu executed a plea form that indicated that his guilty pleas could lead to deportation. The plea form stated, "I * * * am not * * * a citizen of the United States of America. I understand that if I am not a citizen of the United States, a conviction of the offense(s) to which I am pleading guilty may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. I have read this form and I knowingly, voluntarily, and intelligently enter this guilty plea." Idowu's signature followed the statement.
In this case, the alleged Crim.R. 11(C) violation could have been raised directly on appeal. Idowu failed to file a direct appeal of his conviction. "A Crim.R. 11(C) violation that appears on the face of the record but is never directly appealed is not per se susceptible to collateral attack by way of a post-conviction proceeding pursuant to R.C. 2953.21. Under the doctrine of res judicata the Crim.R. 11(C) question merged with the judgment of conviction and the defendant cannot now relitigate the issue."[7] Therefore, we overrule Idowu's first assignment of error.
III. Failure to Personally Advise of Deportation Consequence under R.C. 2943.031
In his second assignment of error, Idowu argues that his guilty pleas should have been set aside because counsel and the trial court failed to advise him personally of the deportation consequences of his plea. Idowu also argues that even had the trial judge advised him according to R.C.2943.031 that he could be deported as a result of his pleas, he still would have suffered prejudice because under federal law he would be deported as a result of his pleas.
R.C. 2943.031 provides, in part,
 (A) * * * [P]rior to accepting a plea of guilty or a plea of no contest to an indictment, information, or complaint charging a felony * * *, the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement:
 "If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."
 Upon request of the defendant, the court shall allow him additional time to consider the appropriateness of the plea in light of the advisement described in this division.
* * *
 (D) Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or no contest and enter a plea of not guilty or not guilty by reason of insanity, if, after the effective date of this section, the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
* * *
 (F) Nothing in this section shall be construed as preventing a court, in the sound exercise of its discretion pursuant to Criminal Rule 32.1, from setting aside the judgment of conviction and permitting a defendant to withdraw his plea.
 Idowu cites State v. Weber[8] in support of his argument that the trial court's failure to comply with R.C. 2943.031 required the court to allow him to withdraw his guilty pleas. In Weber, the defendant had entered a guilty plea in 1990. The trial court did not personally advise the defendant of the possibility of deportation as required by R.C. 2943.031. Seven years later, the defendant filed a motion to vacate or withdraw her guilty plea, alleging that the trial court's failure to advise her of the deportation consequences of her plea required that the plea be vacated under R.C. 2943.031. The trial court overruled her motion, and the appellate court reversed the trial court's judgment.
The appellate court reasoned that, under R.C. 2943.031, the trial court has no discretion and must set aside the conviction if the defendant establishes four statutory criteria: (1) the court failed to provide the advisement described in the statute; (2) the advisement was required to be given; (3) the defendant is not a citizen of the United States; and (4) the offense to which the defendant pleaded guilty may result in the defendant being subject to deportation, exclusion, or denial of naturalization.[9] In that case, the state had argued that, because the defendant's motion was made after her sentencing, she was required to show under Crim.R. 32.1 that the withdrawal of her guilty plea was necessary to correct a manifest injustice.[10] Rather than considering the defendant's motion to withdraw as one made pursuant to Crim.R. 32.1 or as a petition for postconviction relief, the appellate court held "that R.C. 2943.031 confers substantive rights and hence is not superseded by Crim.R. 32.1's conflicting provisions requiring the showing of manifest injustice to withdraw a guilty plea after sentencing."[11]
We are not persuaded by the reasoning in Weber. As we have said, the timing and substance of a motion to withdraw a guilty plea based upon the failure of the court and counsel to advise the defendant of the possibility of deportation, as required by R.C. 2943.031, makes such a motion a petition for postconviction relief. A claim for postconviction relief may be dismissed without a hearing if the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief.[12] A claim may also be dismissed upon the application of the doctrine of res judicata. Res judicata bars a postconviction claim that was raised or could have been raised on direct appeal.[13]
Idowu's claim that that the trial court failed to personally advise him of the deportation consequences of his pleas as required by R.C. 2943.031
is based solely on the record and not on any evidence outside the record. Therefore, the claim is barred by res judicata because it could have been raised on direct appeal.
IV. Ineffective Assistance of Counsel
Idowu also claims that his lawyer was ineffective in failing to inform him of the consequences of his pleas. With his postconviction petition, Idowu submitted an affidavit of his earlier counsel. In the affidavit, his counsel asserted that, while he was not familiar with current federal law regarding legal aliens, he had read the guilty-plea form to Idowu. As we have indicated, the plea form executed by Idowu contained language that advised him of the potential for deportation. Furthermore the plea form contained the following acknowledgment signed by defense counsel:
 I have explained to the defendant prior to his/her signing this form, the charge(s) in the indictment or information, the penalties therefor and his/her constitutional rights in this case. I represent that, in my opinion, the defendant is competent to enter this plea and now does so knowingly, intelligently and voluntarily.
 "A guilty plea waives the right to claim that one was prejudiced by constitutionally ineffective assistance of counsel except to the extent that such ineffective assistance made the plea less than knowing and voluntary."[14] In a postconviction proceeding following a guilty plea, a defendant must show not only that counsel's performance was deficient, but also that there is a reasonable probability that, but for counsel's errors, he would not have entered a guilty plea.[15]
Where a postconviction petition alleges ineffective assistance of counsel, the petitioner bears the burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that he was prejudiced by counsel's ineffectiveness.[16]
We cannot say that counsel's performance was deficient where counsel had advised Idowu of the possibility of deportation in explaining the consequences of his guilty plea. Nor can we say that the trial court erred in denying Idowu's motion where he failed to submit evidence of counsel's incompetence. Accordingly, we overrule Idowu's second assignment of error.
V. Application of Apprendi v. New Jersey
In his third assignment of error, Idowu argues that the decision of the United States Supreme Court in Apprendi v. New Jersey[17] "requires this [c]ourt to set aside [his] plea." But Apprendi did not involve a collateral consequence of a plea. Rather, it involved a trial court's enhancement of a prison term beyond the maximum prescribed for an offense, based upon a state law allowing a court to do so after finding that the offense was racially motivated.
In that case, the state trial court had enhanced the defendant's sentence beyond the prescribed maximum, under a state "hate crime" statute, finding by a preponderance of the evidence that the defendant had acted to intimidate individuals because of race. The United States Supreme Court held that the United States Constitution "requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt."[18] It further held that the rights to due process and to a jury trial "entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."[19] Apprendi is inapposite as it applies to sentencing enhancements rather than the collateral consequences of a guilty plea.
Furthermore, Idowu claims that had defense "counsel been aware of the law that [Idowu] would be deported, he would not have advised [him] to plead guilty, requiring the Prosecutor to prove, beyond a reasonable doubt, every element of the case against [him]." There is absolutely nothing in the record to support Idowu's claim. In fact, the affidavit of Idowu's former defense counsel contains no indication whatsoever that he would not have advised Idowu to enter a guilty plea. Therefore, we overrule Idowu's third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Painter, P.J., and Hildebrandt, J., concur.
[1] State v. Hill (1998), 129 Ohio App.3d 658, 718 N.E.2d 978; see, also, State v. Bush, 3rd Dist. No. 14-2000-44, 2001-Ohio-2220; State v.Deer, 4th Dist. No. 00CA24, 2001-Ohio-2406; State v. Walters (2000),138 Ohio App.3d 715, 742 N.E.2d 206; State v. Parra (Jan. 24, 2000), 6th Dist. No. L-99-1123; State v. Heddleston, 7th Dist. Nos. 98-C-29, 98-C-37, and 98-C-46, 2001-Ohio-3391; State v. Smith (Sept. 13, 2001), 8th Dist. No. 79028; State v. Mollick (July 19, 2000), 9th Dist. No. 99CA007315; State v. Phelps (Sept. 26, 2000), 10th Dist. No. 00AP-109;State v. Raypole (Nov. 15, 1999), 12th Dist. No. CA 99-05-012.
[2] (Mar. 23, 2001), 11th Dist. No. 2000-L-034.
[3] (Jan. 30, 1998), 2nd Dist. No. 16479.
[4] State v. Bush (2001), 93 Ohio St.3d 1448, 756 N.E.2d 112; State v.Northern (2001), 93 Ohio St.3d 1461, 756 N.E.2d 1237.
[5] See Parke v. Raley (1992), 506 U.S. 20, 28-30, 113 S.Ct. 517.
[6] State v. Bush, 3rd Dist. No. 14-2000-44, 2001-Ohio-2220.
[7] State v. Ishmail (1981), 67 Ohio St.2d 16, 18, 423 N.E.2d 1068.
[8] (1997), 125 Ohio App.3d 120, 707 N.E.2d 1178.
[9] Id. at 126, 707 N.E.2d 1178.
[10] Id. at 129, 707 N.E.2d 1178.
[11] Id. at 132, 707 N.E.2d 1178.
[12] See R.C. 2953.21(C); see, also, State v. Combs (1995),100 Ohio App.3d 90, 98, 652 N.E.2d 205.
[13] See State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus.
[14] State v. Heddleston, supra, citing State v. Barnett (1991),73 Ohio App.3d 244, 248, 596 N.E.2d 1101.
[15] Id., citing Hill v. Lockhart (1985), 474 U.S. 52, 106 S.Ct. 366;State v. Cole (1982), 2 Ohio St.3d 112, 114, 443 N.E.2d 169; Stricklandv. Washington (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052.
[16] See State v. Jackson (1980), 64 Ohio St.2d 107, 111,413 N.E.2d 819.
[17] (2000), 530 U.S. 466, 120 S.Ct. 2348.
[18] Id. at syllabus.
[19] Id.