[Cite as *State v. Walker*, 2021-Ohio-3053.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28970 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-3361/2 |
| | : | |
| JAMARKO E. WALKER, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of September, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JAMARKO E. WALKER, JR., Inmate No. 737-138, Trumbull Correctional Institution, P.O. Box 901, Leavittsburg, Ohio 44430
    Defendant-Appellant, Pro Se

. . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Jamarko E. Walker, Jr., acting pro se, appeals from a judgment of the Montgomery County Court of Common Pleas which denied his petition for postconviction relief. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural Background

**{¶ 2}** In 2017, Walker was convicted following a jury trial of multiple charges, including murder, aggravated burglary, aggravated robbery, felonious assault, improper discharge of a firearm at or into a habitation, and discharge of a firearm on or near prohibited premises. Each of those convictions carried a firearm specification. Walker was also convicted by the trial court of having a weapon under disability. The court imposed an aggregate sentence of 24 years to life in prison. We affirmed the convictions in *State v. Walker*, 2d Dist. Montgomery No. 28111, 2019-Ohio-3121 ("*Walker I*").

**{¶ 3}** The facts and procedural history regarding Walker's convictions were set forth in our prior opinion. Relevant hereto, on the evening of October 25, 2016, numerous people were gathered on Riverside Drive at the home of Germel Hughes. One of those present was James Mitchell. At approximately 11:45 p.m., Mitchell and some others left the gathering to go to a bar. The group exited Hughes's home and walked toward Mitchell's van, which was parked on the road by the house. As the group approached Mitchell's van, they were accosted by several armed men. Two of the men, who Mitchell recognized and subsequently identified as Walker and Curtis McShann, were at the driver's door of Mitchell's van. Walker ordered Mitchell to get on the ground and then placed a "machine gun" against Mitchell's back. *Walker I* at ¶ 29. A distinctive

wallet described as a "zombies wallet," which was "all black with red and green writing on it," was taken from Mitchell's pocket. *Id.* at ¶ 32. 509-510. The wallet contained money and Mitchell's identification.

{¶ 4} While on the ground, Mitchell observed a third person, who was carrying a handgun, walk into the house. That person then exited and began shooting into the house. McShann and Walker also began to fire their weapons in the direction of the house. Mitchell crawled under his van. After the shooting stopped, Mitchell saw McShann and Walker leave the scene in a vehicle. Mitchell then drove his friends, some of whom were injured, to a local hospital. When police arrived at the scene of the shooting, they discovered the body of Brandon Lanier on the sidewalk across the street from Hughes's home.

{¶ 5} Detective Daugherty of the Dayton Police Department was assigned to investigate Lanier's death. During the initial hours of the investigation, Daugherty asked Detective Nathan Via to interview some of the individuals who had been at the scene. Via interviewed Mitchell in the early morning hours of October 26. During the interview, Mitchell referred to the two men who accosted him as Curt and Demarko. Other information obtained by police pointed to Curt McShann and a man named Jamarko as suspects. Daugherty requested that an officer prepare a photographic array including a picture of McShann. Because Daugherty was aware that McShann had a brother named Jamarko McShann, he requested a separate array to include Jamarko McShann.

{¶ 6} At approximately 4:00 a.m. on October 26, Brandon Lanier's sister arrived at the Safety Building and informed officers that her brother had been with Jamarko Walker the previous evening. Based upon this information, Daugherty then requested a third

array including Walker's picture.

**{¶ 7}** At approximately 7:00 a.m. on October 26, Dayton Detective Rod Roberts, acting as a blind administrator, presented the McShann arrays to Mitchell. Mitchell identified Curt McShann as one of his assailants. Thereafter, Curt McShann's cell phone was tracked by an FBI specialist. The evidence showed that the phone had been in the area of the shooting at the time of the crime and that it had subsequently travelled to Middletown. The police obtained the address of an apartment in Middletown rented by a woman whose name was discovered from information on McShann's phone. When Dayton detectives searched the woman's apartment, they found both McShann and Walker hiding in the bathroom with the light off. A wallet matching the description given by Mitchell was retrieved from the pocket of Walker's pants. The wallet contained Mitchell's identification. A black .9 millimeter handgun and a zippered hooded sweatshirt were recovered from a couch in the apartment. Walker admitted he had been sleeping on that couch.

**{¶ 8}** Walker and McShann were arrested and transported back to Dayton. Daugherty interviewed Walker around noon on October 26, 2016. At trial, the following evidence was adduced regarding that interview:

Daugherty testified that he advised Walker why he was there and showed him a photo of Lanier. Daugherty testified that Walker stated that Lanier was his cousin, and Walker had seen Lanier two or three days earlier. Daugherty testified that, when he asked Walker about Mitchell's wallet being found on his person, Walker stated that Mitchell was his friend, Mitchell had left his wallet and identification in Walker's car the day before,

and Walker was planning to return it to Mitchell. When Daugherty told Walker that Mitchell indicated his wallet had been taken in a robbery and that other people had been shot, Walker denied robbing anyone, then said that he had gotten into a fight with Mitchell the day before in an apartment complex; Walker claimed to have inadvertently picked up Mitchell's wallet after the fight. Daugherty testified that Walker denied being at the scene of the shooting and stated that he had spent some time with his girlfriend at the time of the shooting. Daugherty testified that, after Walker repeatedly changed his story, Walker then said, "Let's start over. I'm going to be honest with you now."

When Daugherty asked Walker if any of the 9mm shell casings found at the scene would match the 9mm weapon retrieved from the apartment, Walker told him, "it's my gun but my people had it"; Daugherty testified that Walker stated that he had given the gun to Lanier "because his cousin had the beef with Mel at the house there on Riverside and Ryburn." Walker denied firing the weapon.

A DVD of Daugherty's interview with Walker was played for the jury and is part of the record in this case. In the course of the interview, Walker told Daugherty that Lanier was in the car with him, that before Lanier exited the vehicle he (Walker) gave his (Walker's) 9mm handgun to Lanier, that he (Walker) stayed in the car, and that he retrieved the gun from Lanier after he was shot.

*Walker I* at ¶ 47-49.

{¶ 9} On October 27, 2016, Detective Michael Debord acted as a blind administrator and showed the array with Walker's picture to Mitchell.  Mitchell identified Walker as the person he had referred to as Demarko.[1]  Ultimately, Walker was indicted and convicted as set forth above.

{¶ 10} On September 4, 2019, Walker filed a timely motion for postconviction relief in which he raised three separate claims of ineffective assistance of counsel. Specifically, he asserted trial counsel failed to (1) investigate exculpatory evidence, (2) object to the charging complaints, and (3) investigate and subpoena a certain witness. Attached to the petition were numerous unauthenticated documents purporting to be copies of police reports, certificates of incarceration, "Detective Investigatory Product," Municipal Court Statements of Fact for Probable Cause Determination, and Walker's affidavit.  Walker's affidavit was addressed solely to the issue of his indigency.  The State filed an answer and a motion to dismiss.  The trial court dismissed the motion without a hearing.

{¶ 11} Walker appeals.


## II.     Postconviction Relief

{¶ 12} R.C. 2953.21(A)(1)(a)(i) provides that any person convicted of a criminal offense "may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence

---

[1] At trial, Mitchell "testified that he and Walker had dated the same woman; at the time of the incident, Mitchell knew Walker but did not know his full name and 'was actually calling him Damarko.' "  Mitchell identified Walker as the person who held the gun to his back. *Walker I* at ¶ 29.

or to grant other appropriate relief." The statute further provides that the "petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(b).

{¶ 13} "The post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment." *State v. Monroe*, 10th Dist. Franklin No. 04AP-658, 2005-Ohio-5242, ¶ 7, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). An evidentiary hearing is not required for every petition seeking such relief. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819, 822 (1980). A petition may be properly dismissed without holding an evidentiary hearing when the petitioner fails to set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, paragraph two of the syllabus.

{¶ 14} Regarding claims of ineffective assistance of counsel, the Supreme Court of Ohio has stated that "before a hearing is granted, 'the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " *Id.* at 283, quoting *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), at syllabus. If the petitioner fails to meet this burden, the trial court may summarily dismiss the petition without a hearing. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph two of the syllabus. Further, "[b]road assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing." *Jackson* at 111.

{¶ 15} Additionally, a trial court may deny a petition without a hearing if the claim asserted in the petition was, or could have been, raised at the trial or in the direct appeal. *State v. Combs*, 100 Ohio App.3d 90, 97, 652 N.E.2d 205 (1st Dist.1994). Such claims are barred by the doctrine of res judicata, which stands for the proposition that "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *Perry* paragraph 9 of the syllabus. "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge*, 120 Ohio App.3d 122, 151, 697 N.E.2d 228 (2d Dist.1997).

{¶ 16} "We review a denial of a petition for postconviction relief for which no hearing was held under an abuse of discretion standard." *State v. Clemmons*, 2d Dist. Montgomery No. 28085, 2019-Ohio-2997, ¶ 18, citing *State v. Harden*, 2d Dist. Montgomery 23617, 2010-Ohio-3343, ¶ 10. "The term 'abuse of discretion' has been defined as a decision that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *Id.*

### III.   First Assignment of Error

{¶ 17} Walker asserts the following for his first assignment of error:

APPELLANT SUFFERED A VIOLATION OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS

DEFENSE COUNSEL FAILED TO INVESTIGATE AND PRESENT EXCULPATORY EVIDENCE RELATED TO THE IDENTITY OF THE PERPETRATOR OF THE CRIMES.[2]

{¶ 18} Walker contends his trial counsel was ineffective because he failed to properly investigate and present identification evidence which would have demonstrated Walker was not involved in the instant offenses. Walker argues that the identification in this case was "critical and confusing" because there were two individuals "involved in the case who shared the same, unusual first name, 'Jamarko.' " He thus claims that counsel should have used last names throughout the trial in order to avoid confusion. He further claims that certain information contained in the report of Dayton Police Detective Via should have been introduced in order to demonstrate that Mitchell identified Jamarko McShann rather than Walker as the perpetrator.[3]

{¶ 19} As stated above, in order to establish substantive grounds for relief on a claim of ineffective assistance of trial counsel, Walker bore the initial burden of submitting evidentiary materials containing sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) that counsel's performance was deficient and (2) that the

---

[2] Walker's assignments of error are merely a repetition of his arguments made in the trial court below. As such, they do not purport to inform us of any errors made by the trial court in overruling the arguments. Thus, we will treat them as alleging that the trial court abused its discretion in overruling the petition for postconviction relief.

[3] Walker's appellate brief also makes arguments regarding whether the offenders were masked and whether witnesses had been threatened. Since those matters were not raised at the trial court level, they were not preserved for appeal and we need not address them. Further, both those issues were raised in the direct appeal and thus any further arguments related thereto are barred by res judicata.

deficient performance prejudiced the defense. We review counsel's trial performance with a strong presumption that counsel gave reasonable, professional assistance. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶ 20} We begin with the claim that counsel should have used last names during the trial in order to avoid confusion between Jamarco McShann and Walker. The only confusion regarding Walker's name that we can ascertain in the record concerns the fact that, during the initial hours of the investigation, Mitchell referred to Walker as Damarko. However, Mitchell testified that he did not know Walker well and that he really just knew him by sight as a person who had been involved with the same woman as Mitchell. When Mitchell was shown a photo array including a photograph of Walker, he identified Walker as the person who held a gun to his back during the commission of the offenses. Further, we find nothing to indicate that Jamarko McShann's and Walker's names were used in a manner that would have confused the jury, and Walker did not cite to any portion of the record to support his claim. Indeed, the few references we see in the trial transcript to Jamarko McShann specify both his first and last names. Even were we to conclude that trial counsel were deficient in this regard, this argument could have been determined by a review of the trial transcript and could have been raised on direct appeal. Thus, this issue is barred by res judicata.

{¶ 21} We next address Walker's claim that trial counsel was ineffective because he failed to present the following information from Via's police report which, he claims, demonstrated Mitchell actually identified Jamarko McShann as the perpetrator:

I asked Mitchell how he knew Demarko and Kurt. Mitchell told me Kurt and

Demarko robbed Germel and took his Audi vehicle in a recent robbery.

Mitchell also saw pictures of the two sometime after the robbery and believes it was from Facebook. Word on the street is Demarko has been committing a lot of armed robberys [sic] since he recently got out of prison in Lebanon. Mitchell also knows Demarko because the two have had a sexual relationship with a female named ["C"]. Since the robbery of Germel's Audi, Mitchell has seen both Kurt and Demarko out in public 2 - 3 times.

Exh. A-4 to Petition for Postconviction Relief.

{¶ 22} Walker asserts the individual referred to in the Via report must be Jamarko McShann. In support, Walker first claims the individual referred to in the report is not him because he had no convictions prior to this case. Walker further claims Jamarko McShann had been previously convicted of a crime and served time in the Lebanon Correctional Institution. Finally, he claims the stolen Audi did not belong to Germel Hughes and was stolen by someone other than Walker.

{¶ 23} The record demonstrates that trial counsel was fully aware of the contents of the Via report. Specifically, the State filed a Notice of Intent to Use Evid.R. 404(B) information that Walker and Curt McShann had robbed Germel Hughes of his car and money approximately 15 days prior to the shooting that led to the charges in this case. The State argued the evidence was admissible to show motive in that Walker and McShann believed Hughes had more money and the later shooting incident was related to the attempt to rob Hughes of that additional money. Trial counsel filed a response opposing the introduction of such evidence. Both the response and the trial transcript made it clear that the State had provided the Via report and that defense counsel sought

to restrict the use of the information contained therein.   Thus, it is clear that counsel was aware of this information and made a strategic decision to keep it from the jury.   We cannot conclude this supports a finding of deficient performance by counsel.

{¶ 24} Further, we cannot conclude that the information in Via's report exonerated Walker.   While there was no evidence that Walker had ever been in prison, there was evidence that he had previously committed a felony offense.   Specifically, the parties stipulated on the record that Walker was, at the time of the instant offenses, under supervision for intervention in lieu of conviction for the offense of possession of cocaine, a felony of the fifth degree.

{¶ 25} Next, Walker claims that the information given by Mitchell as set forth Via's report must refer to Jamarco McShann because McShann had been incarcerated in the Lebanon Correctional Institution.   However, Walker attempts to support this claim with an unauthenticated document indicating McShann had been previously incarcerated. But the document did not state the facility to which he was committed.   Further, as noted in the report, Mitchell's statement constituted hearsay as it indicated the information was garnered from "word on the street."   This was not sufficient to establish that Mitchell was referring to McShann rather than Walker

{¶ 26} Walker's evidence regarding the theft of the Audi consisted of another unauthenticated document which purported to be an investigatory report regarding the theft of an Audi on October 9, 2016.   Significantly, the document did not establish who actually stole the vehicle.   Further, while the document indicated that Hughes did not own the Audi, it did state that investigators found items belonging to Hughes in the vehicle. Thus, this information did not establish that Walker did not steal the Audi while Hughes

was using it.

{¶ 27} Based upon this record, we conclude that Walker failed to establish that the individual referred to in Via's report was Jamarko McShann rather than Walker. Other than Walker's conclusory statement, we find nothing to indicate counsel was deficient. There is nothing to support the conclusion that counsel failed to investigate the police report or that any decision whether to pursue the information therein was anything other than a strategic choice.

{¶ 28} Further, in our prior opinion, we reviewed Mitchell's identification of Walker from a photo array and concluded that it was reliable. *Walker I* at ¶ 78-80. Mitchell identified Walker as the person who held a machine gun to his back during the shooting. Further, Mitchell identified Walker at trial. Walker admitted that he was at the scene of the shooting, and he claimed to have given his handgun to Lanier. The evidence showed that Mitchell's unique wallet and his identification were found with Walker. The gun found on the couch in the apartment was identified as Walker's and was established as one of the guns used in the shooting. The hooded sweatshirt found on the couch matched the description of the offenders' apparel given by witnesses. Walker admitted to police that he had been sleeping on the couch where these items were found. In our previous opinion, we concluded that the State had presented evidence sufficient to sustain the convictions and that the convictions were not against the manifest weight of the evidence. *Walker I* at ¶ 127.

{¶ 29} The trial court reasonably concluded that the claims made by Walker concerning Via's report lacked merit and did not establish any problem with Mitchell's identification of him. It also reasonably found no merit to the claim that the jury was

confused by the fact that Walker and McShann have the same first name. More importantly, Walker did not demonstrate that his counsel's actions were either deficient or prejudicial. Accordingly, the trial court did not abuse its discretion in denying this argument without a hearing.

{¶ 30} The first assignment of error is overruled.


## IV.    Second Assignment of Error

{¶ 31} Walker's second assignment of error is as follows:

APPELLANT SUFFERED A VIOLATION OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO ENSURE THE ACCURACY OF THE STATEMENT OF FACTS ATTESTED TO AND USED BY POLICE AS PROBABLE CAUSE TO GAIN AN INDICTMENT FOR THE HOMICIDE OF BRANDON LANIER.

{¶ 32} Walker asserts that his convictions must be overturned because they were based upon an invalid complaint. He also argues that counsel was ineffective for failing to object to the complaint. Walker argues "the alleged facts related to the homicide of Appellant's cousin, Brandon Lanier, (who was killed at the scene of a large gunfight) was never properly attested to prior to the seeking of an indictment on the charge. This makes the seeking of an indictment for this charge bereft of probable cause."

{¶ 33} Walker attached two documents to his petition, which were purportedly copies of documents filed in the Dayton Municipal Court. Both documents were titled "Statement of Facts/Review of Information for Probable Cause Determination." The first document set forth a typewritten statement of facts regarding the robbery of James

Mitchell. That document was notarized. The second document was identical to the first except it contains a handwritten addendum to the statement of facts set forth in the first document. That addendum set forth information relating to the death of Brandon Lanier. However, the addendum was not separately notarized.

{¶ 34} Walker correctly asserts that "[t]he filing of a proper affidavit is a necessary prerequisite to the acquisition by a Municipal Court of jurisdiction to try an accused on a criminal charge." *City of Columbus v. Jackson*, 93 Ohio App. 516, 114 N.E.2d 60 (2d Dist.1952), paragraph 1 of the syllabus. However, Walker was neither prosecuted nor convicted upon the allegedly defective complaint and affidavit presented to the Dayton Municipal Court. Rather, following his arraignment in municipal court, Walker was indicted by the Montgomery County grand jury on the subject charges.

{¶ 35} The felony jurisdiction of the court of common pleas is invoked by the return of a proper indictment by the grand jury of the county. *State v. Pillow*, 2d Dist. Greene No. 2010-CA-71, 2011-Ohio-4294, ¶ 18. A complaint is not necessary where the grand jury returns a valid indictment. *State v. Martin*, 4th Dist. Lawrence No. 01CA24, 2002-Ohio-6140, ¶ 21-22. *See also State v. Williams*, 12th Dist. Butler No. CA2014-06-144, 2015-Ohio-1090, ¶ 8 (the accused in a felony case is tried on the indictment by the grand jury, not the affidavit filed against him). Thus, even if there were defects in the complaint filed in the municipal court, such defects would be irrelevant and harmless because Walker's conviction was based on the grand jury's indictment.

{¶ 36} Because the issuance of a grand jury indictment renders any defect in the complaint moot, there was no reason for counsel to raise any objection to the initial complaint. And since there is nothing in the record or in Walker's petition demonstrating

a deficiency in the indictment, we conclude that Walker was arraigned, convicted and sentenced upon a valid grand jury indictment. Thus, any allegation of ineffective assistance of counsel regarding this issue is without merit, and the trial court did not abuse its discretion in denying a hearing on this issue.

{¶ 37} The second assignment of error is overruled.


## V. Third Assignment of Error

{¶ 38} Walker's third assignment of error is as follows:

APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS DEFENSE COUNSEL FAILED TO INVESTIGATE A WITNESS WHO COULD SUBSTANTIATE APPELLANT'S INNOCENCE OF A CRIME.

{¶ 39} Walker contends that trial counsel should have, but failed to, investigate and subpoena a potential eyewitness, Sheila Casey, who he claims would have provided exculpatory evidence at trial. As support for this claim, Walker attached a document to his petition purporting to be a copy of a police report submitted by Dayton Police Officer Zachary Banks, which stated:

> I began speaking with a female, Sheila Casey, who stated that when she heard the shots, approximately 50, she ran out of the apartment located on Theodore near Ryburn, and towards the area where the deceased victim was located. Casey initially tried to help the victim, but was unable to. While with the unconscious, lifeless victim, an unknown male approached her and said that she needed to leave and that is [sic] she did not the male

would "kill her next."   The male was then said to pick up the body and say, "I don't even know this n****."   Detective House responded to the scene and spoke with Casey in further detail.

{¶ 40} Walker asserts that Casey would have provided testimony that "he was not the person [with whom she] interacted that night."

{¶ 41} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court."   *State v. Jeffers*, 10th Dist. Franklin No. 10AP-1112, 2011-Ohio-3555, ¶ 9, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).   Other than Walker's conclusory assertion in his brief, there is nothing in the record to substantiate the claim that trial counsel failed to investigate Casey's potential testimony or that Casey would have testified she did not see Walker.   Indeed, it is not clear from the police report whether Casey even observed the face of the male who approached her while she was with the body.   Thus, on this record, we cannot say that Walker has demonstrated any deficiency.

{¶ 42} However, even if we were to conclude that counsel was deficient with regard to either investigating or calling Casey as a witness, we could not conclude that Walker was denied the effective assistance of counsel because he did not established any deficiency resulting in prejudice.   To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different."   *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland,* 466 U.S. at 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674, and *Bradley,* 42 Ohio St.3d 136, 142, 538 N.E.2d 373, at paragraph two of the syllabus.

{¶ 43} In this case, the credible evidence established there were three men

involved in the shooting. One, Lanier, was the dead man discovered by Casey. Even if Casey had testified that the male who subsequently interacted with her was not Walker, such testimony would not have been dispositive of Walker's innocence, as there was a third individual involved with whom Casey did not interact. In other words, Casey may have interacted with McShann rather than Walker, but such evidence would not have proved that Walker was not involved in the offenses.

{¶ 44} Because this record did not demonstrate deficiency or prejudice, the trial court reasonably concluded that Walker failed to demonstrate that counsel was ineffective. Therefore, the trial court did not abuse its discretion in denying this claim.

## VI.    Conclusion

{¶ 45} All of Walker's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Jamarko E. Walker, Jr.
Hon. Richard Skelton